Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as
STIPULATIONS
All stipulations contained in the Pre-Trial Agreement are incorporated herein by reference.
* * * * * * * *
The Full Commission adopts the findings of fact of the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. Plaintiff is a thirty-six year old married female with two children, one of them under the age of eighteen. Plaintiff has an eleventh grade education, and prior to becoming employed with defendant-employer, worked as a cashier, a retail sales person, and as an aide in a nursing home.
2. In approximately February 1993, plaintiff became employed with defendant-employer as a Cleaner. Defendant-Able Restoration Services is in the business of cleaning homes and commercial establishments. In carrying out her job duties with defendant-employer, plaintiff drove defendant-Able Restoration Services' van which had defendant-Able Restoration Services' name written on it, and wore a shirt with defendant-Able Restoration Services' name written on it. Defendant-Able Restoration Services furnished the materials and supplies used in carrying out plaintiff's job duties and directed plaintiff which jobs to perform. The payment for the performance of these jobs was made to the defendant-Able Restoration Services. Plaintiff worked for no one else while she was employed by defendant-Able Restoration Services as a Cleaner. Furthermore, defendant-Able Restoration Services paid plaintiff according to the number of hours she worked, and not according to the job.
3. Sometime prior to April 13, 1993, plaintiff began working with defendant-Able Restoration Services as a Crew Leader; however, plaintiff continued being paid and supervised by defendant-Able Restoration Services under the same terms.
4. On or about April 13, 1993, plaintiff was an employee of defendant-Able Restoration Services.
5. On April 12, 1993, plaintiff obtained a dry cleaning chemical called perchlorethylene from a local dry-cleaning establishment at the instruction of defendant-employer.
6. On April 13, 1993, plaintiff along with Wanda Constante, a co-worker, went to a house to perform some cleaning work for defendant-employer. When they got to the house, Ms. Constante began using the ET machine which contained the perchlorethylene chemical to clean draperies. Ms. Constante cleaned three bedrooms and a bathroom and began cleaning a den/dining room combination room. Ms. Constante became dizzy and nauseous and had to go outside to get some fresh air. Ms. Constante asked the plaintiff to take over the cleaning of the curtains.
7. Plaintiff took over cleaning of the curtains in the den/dining room; however, plaintiff also became nauseous. Plaintiff and Ms. Constante left the client's house without completing the cleaning. Plaintiff drove back to defendant's office.
8. When plaintiff and Ms. Constante returned to defendant-employer's office, the plaintiff passed out and was taken to the Haywood County Emergency Room. Ms. Constante accompanied plaintiff to the hospital, but sought no medical treatment for herself even though she had received more exposure to the chemical than the plaintiff. The treatment which plaintiff received at the Emergency Room tended to effect a cure and provide relief.
9. The plaintiff remained out of work that week and was paid by defendant-employer for the time that she was out of work. The plaintiff returned to work the following week on April 19, 1993. Thereafter, plaintiff continued performing her regular job duties for defendant-employer until July 3, 1993 when she was terminated for reasons unrelated to the incident of April 13, 1993.
10. The fact that plaintiff was exposed to the cleaning chemical perchlorethylene, a chemical she had never used before during the course of her employment with defendant-employer prior to April 13, 1993, which resulted in plaintiff seeking medical attention on April 13, 1993, constituted an unusual occurrence which interrupted plaintiff's regular work routine.
11. There exists no medical evidence of record that plaintiff received any treatment for conditions which she alleges resulted from her exposure to perchlorethylene on April 13, 1993 until after her termination from employment with defendant-employer on July 3, 1993 other than the Emergency Room record of April 13, 1993.
12. After termination from employment with defendant-employer, plaintiff sought treatment for the first time for a skin rash, and in November 1993, plaintiff was admitted to Haywood County Hospital with complaints of suffering from seizure-like episodes. Prior to the April 13, 1993 incident, plaintiff had a history of "blacking-out" spells following a work related incident at Roses on April 23, 1990, and following another non-work related incident on December 6, 1992. Following the November 1993 admission, the plaintiff was also admitted to Haywood County Hospital again on February 23, 1994, January 1995, February 1995, May 1995, and June 1995.
13. Due to these episodes, plaintiff came under the care of Dr. McKinney, a neurologist. Dr. McKinney recommended a sleep-deprived EEG, which was read to be abnormal, and was thought to be indicative of a seizure disorder. Therefore, Dr. McKinney treated the plaintiff for her seizure disorder by prescribing Dilantin. The plaintiff then experienced difficulty in maintaining a therapeutic level of Dilantin, and at one point the plaintiff's compliance in taking the Dilantin was questioned. In addition, Dr. McKinney indicated in his office notes that the diagnosis for the plaintiff was seizure disorder versus possible pseudo-seizures.
14. When Dr. McKinney retired, the plaintiff came under the care of Dr. Palay, another neurologist, who took over Dr. McKinney's practice. Dr. Palay ordered a repeat EEG in March 1995 which was normal and not indicative of any seizure disorder. Furthermore, when Dr. Palay last saw plaintiff, her liver function studies were within normal limits which would indicate that plaintiff had sustained no liver damage as a result of her exposure to perchlorethylene. Dr. Palay was unable to relate plaintiff's medical complaints including her headache and pseudo-seizure disorder to her exposure to perchlorethylene.
15. In addition to being treated by Dr. Palay, the plaintiff went to Duke University Medical Center and was evaluated by Dr. Darcey, a specialist in occupational medicine, on March 21, 1995. Dr. Darcey, like Dr. Palay, was unable to relate plaintiff's medical complaints, specifically her seizure, or pseudo-seizure, disorder to her exposure to perchlorethylene on April 13, 1993. While the acute exposure to perchlorethylene sustained by the plaintiff on April 13, 1993 caused symptomatic effects at that time, those effects would not linger after the exposure ceased. Said effects would last only a period of days and would then resolve. While the MSDS sheet for perchlorethylene mentioned several possible side effects, those side effect refer to chronic exposures to perchlorethylene, and not a one-time acute exposure.
16. Plaintiff's medical records were also reviewed by Dr. Mitchell Freedman, another neurologist. Dr. Freedman obtained the original tracing of plaintiff's EEG performed in January 1994, and read that EEG tracing as normal, as was the subsequent EEG performed in March 1995. Furthermore, even if the EEG performed in January 1994 were read as abnormal, it indicated generalized polyspike activity which one sees with idiopathic seizures and not with seizures which are the result of trauma or chemical exposure. Therefore, if this EEG were indeed abnormal, it tends to demonstrate that plaintiff's seizures are idiopathic in origin, as opposed to being the result of a one-time chemical exposure. Dr. Freedman, therefore, was likewise unable to relate plaintiff's seizure or pseudo-seizure disorder to her acute exposure to perchlorethylene on April 13, 1993.
17. The only medical evidence of record which relates plaintiff's present complaints to the incident of April 13, 1993, is the testimony of Dr. Milling. Dr. Milling is not plaintiff's treating physician and has not examined plaintiff since September 1992 when he examined her for a job related physical. In fact, this was the only occasion when Dr. Milling examined plaintiff. Dr. Milling is a physician engaged in general practice and has never treated a patient for exposure to perchlorethylene.
18. In assessing the medical evidence in this case, the Full Commission affords greater weight to the opinions of Dr. Palay, a neurologist and plaintiff's treating physician; Dr. Darcey, a specialist of occupational medicine; and Dr. Freedman, another neurologist; than to the opinion of Dr. Milling. Furthermore, Dr. Milling deferred to Dr. Darcey's opinion regarding the causation of plaintiff's alleged seizure disorder.
19. Plaintiff has failed to prove that the conditions for which she subsequently sought medical treatment including her seizure disorder (whether true seizures or pseudo-seizures), and her skin rash condition, resulted from the injury by accident of April 13, 1993.
20. As a result of the April 13, 1993 injury by accident giving rise hereto, plaintiff was unable to work for defendant-employer, or any other employer, from April 13, 1993 until her return to work on Monday, April 19, 1993. However, as of April 19, 1993, plaintiff had regained the capacity to return to her usual work duties with defendant-employer. Plaintiff's loss of earnings after July 3, 1993 did not result from the injury by accident giving rise hereto.
* * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. The courts have identified a number of factors to be considered in determining whether a person is an independent contractor versus an employee: (a) whether the person is engaged in an independent business, calling or occupation; (b) whether the person has independent use of his skill, knowledge or training in execution of the work; (c) whether the person is doing a specific piece of work at a fixed price, or for a lump sum or upon quantitative basis; (d) whether the person is subject to discharge because he adopts one method of doing the work rather than another; (e) whether the person is in the regular employ of the other contracting parties; (f) whether the person is free to use such assistants as he thinks proper and has full control over such assistants; and (g) whether the person selects his own time. The presence of no one of these factors is controlling, nor is the presence of all required. Hayes v.Board of Trustees, 224 N.C. 11, 29 S.E.2d 137 (1944).
2. On April 13, 1993, an employee-employer relationship existed between plaintiff and defendant-Able Restoration Services. N.C. GEN. STAT. § 97-2.
3. On April 13, 1993, defendant-Able Restoration Services regularly employed at least three employees and was therefore subject to and bound by the provisions of the North Carolina Worker's Compensation Act. N.C. GEN. STAT. § 97-2(1).
4. On April 13, 1993, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer when she was exposed to the chemical perchlorethylene. N.C. GEN. STAT. § 97-2(6).
5. Plaintiff is entitled to have defendant provide the medical treatment she received at the Haywood County Emergency Room on April 13, 1993, as such treatment tended to effect a cure and give relief. However, plaintiff is not entitled to have defendant provide further medical treatment, as plaintiff has not proven that the medical conditions for which she subsequently sought treatment after she last worked for defendant-employer resulted from the injury by accident giving rise hereto. N.C. GEN. STAT. § 97-25; See Click v. Pilot Freight Carriers,Inc., 300 N.C. 164 S.E.2d 389 (1980).
* * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendant shall pay all medical expenses incurred by plaintiff as a result of this injury by accident.
2. Plaintiff's claim for further benefit pursuant to provisions of the North Carolina Worker's Compensation Act is hereby Denied.
3. Defendant shall pay expert witness fees in the amount of $140.00 to Dr. Milling, and $180.00 to Dr. Palay.
3. Defendant shall pay the costs due this Commission.
 S/ _____________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _____________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _____________ LAURA K. MAVRETIC COMMISSIONER
BSB:md