DEVIN, J., dissenting.
SCHENCK and SEAWELL, JJ., concur in dissenting opinion.
Proceedings before the Industrial Commission for compensation for the death of an alleged employee. *Page 13 
The defendant Board owns a local electric light system which serves its college buildings. It buys electricity wholesale from the Duke Power Company and distributes it over its own system.
One C. W. Wright is the Assistant Superintendent of Duke Power Company and C. D. Lovett is the Business Manager of defendant Board.
One of the poles of defendant's system fell down, and it employed Peele Electric Company, a contractor of Burlington, N.C. to replace it. At that time, the Duke Power Company having been advised that one of its feed lines was out of order, Wright took one of his electricians, Grimes Moore, and went to the college to investigate. He then advised Lovett that the other poles in the college system were in bad condition, and Lovett said he would like to rebuild the whole system, especially the east side, if he could get the material, and he asked what to do about it. Wright stated that his company could not agree to rebuild but that it employed electricians who did jobs of that kind during their "off" hours and that he would look into it and see him again later if he could get the material. Several weeks later Lovett got in touch with Wright and told him he had secured the material to rebuild the east side and was ready to go to work.
"I (Wright) first asked him how did he want to do it, by the hour or what, how did he want to go about the pay. I told him that the fellows when they were off from work tried to make time and a half. He said he didn't know anything about the work, so he had rather do it so much for the job. Then he discussed that he would pay $30.00 to do it, and I told him that I would have to see the boys and see if they would do it for that. Lovett said he would have the holes dug."
Wright then saw Moore and the deceased, Hayes, and told them of his conversation, and that if they wanted to set the six poles and transfer the wires for $30.00 that they could do it. Moore and Hayes got another electrician, Dixon, to accompany them, and went to the plant of the defendant and had a conversation with Lovett, but compensation was not mentioned. "He wanted those six poles from that building around to the dining room replaced or set the new ones in and transfer the wire from the old ones to the new ones, and we asked him if we could get some help, there wasn't but three of us, and he said we could get some of the colored boys from over at the plant over there. Lovett said he didn't know anything about the work and he was leaving it up to us to fix it and fix it right." While talking to Lovett the electricians also told him that they did not have all their equipment and asked if they could have a truck to back the poles in. Lovett replied, "I thought you were going to bring it." They carried with them their "climbers" and other electrician's tools, but "got a shovel and pipe poles." Defendant also furnished a truck and two helpers. *Page 14 
"Mr. Hayes asked him about cutting some limbs, said if he used those poles there would have to be some limbs cut off. Lovett said he would rather not have the trees cut, he would rather make some arrangements about the poles, said he would rather to take some off the poles than to cut the trees. He told us to cut about ten feet off of each pole. One of the colored fellows went and got a saw, and we cut off the poles."
Also "they (the electricians) asked about `killing' the line. I told them they could have it cut off whenever they liked. I asked them not to cut it off any longer than necessary."
After they had set four poles they found they had to let the wires down in order to set the fifth pole. Moore climbed the pole and "untied" the wires and let them drop. The deceased, thinking it was a low voltage wire, caught hold of it to help, and was killed by the high voltage.
After the death of Hayes the other two electricians procured a third party to assist them and worked awhile each day after five o'clock and on Saturdays and Sundays for about two weeks until they completed the job.
When the job was completed Lovett insisted that he made the contract with Wright and tendered a check for $30.00 payable to Wright. This the electricians refused to accept.
Claim for compensation was filed. The defendant denied that deceased was an employee of the college. The hearing Commissioner made an award which was approved by the full Commission. On appeal the court below affirmed and defendants appealed.
Briefly stated, the defendant Board through Wright contracted with the electricians to rebuild a part of its electric line for the lump sum of $30.00. The electricians agreed to undertake and complete the job if the defendant would furnish a truck and two helpers. After some discussion about trimming some trees to clear the wires, at the suggestion of Lovett, the poles were shortened so as to clear the wires without cutting the trees. After deceased was killed the work was temporarily stopped, and defendant notified the other electricians it wanted the job completed. They, and not the defendant, obtained other help and completed the job. Defendant paid in a lump sum by check.
What was the relationship created by this contract? Were the electricians, including the deceased, employees or independent contractors? This is the decisive question. *Page 15 
While the Commission concluded that the electricians were employees, this is not controlling. There is no substantial controversy as to the facts. This being true, the relationship created by the contract is a question of law, and the conclusion of the Commission is reviewable. Thomasv. Gas Co., 218 N.C. 429, 11 S.E.2d 297; Beach v. McLean, 219 N.C. 521,14 S.E.2d 515.
The distinction between "servant" or "employee" and "independent contractor" has been frequently discussed and defined by this and other courts as well as by textwriters. Young v. Lumber Co., 147 N.C. 26,60 S.E. 654; Gay v. R. R., 148 N.C. 336, 62 S.E. 436; Denny v. Burlington,155 N.C. 33, 70 S.E. 1085; Beal v. Fiber Co., 154 N.C. 147,69 S.E. 834; Johnson v. R. R., 157 N.C. 382, 72 S.E. 1057; Harmon v.Contracting Co., 159 N.C. 22, 74 S.E. 632; Embler v. Lumber Co.,167 N.C. 457, 83 S.E. 740; Simmons v. Lumber Co., 174 N.C. 220,93 S.E. 736; Cole v. Durham, 176 N.C. 289, 97 S.E. 33; Greer v. ConstructionCo., 190 N.C. 632, 130 S.E. 739; Aderholt v. Condon, 189 N.C. 748,128 S.E. 337; Drake v. Asheville, 194 N.C. 6, 138 S.E. 343; LumberCo. v. Motor Co., 192 N.C. 377, 135 S.E. 115; Bryson v. Lumber Co.,204 N.C. 664, 169 S.E. 276; Construction Co. v. Holding Corporation,207 N.C. 1, 175 S.E. 843; Beach v. McLean, supra; Vogh v. Geer,171 N.C. 672, 88 S.E. 874; Re Murray, 75 A.L.R., 720; Gulf RefiningCo. v. Brown, 116 A.L.R., 449; Anno. 19 A.L.R., 226, 1172, and 20 A.L.R., 686; 14 R. C. L., 65; 27 Am. Jur., 479; Henry v. Mondillo,142 A. 230.
It appears from these authorities that the retention by the employer of the right to control and direct the manner in which the details of the work are to be executed and what the laborers shall do as the work progresses is decisive, and when this appears it is universally held that the relationship of master and servant or employer and employee is created.
Conversely, when one who, exercising an independent employment, contracts to do a piece of work according to his own judgment and methods, and without being subject to his employer except as to the result of the work, and who has the right to employ and direct the action of the workmen, independently of such employer and freed from any superior authority in him to say how the specified work shall be done or what laborers shall do as it progresses, is clearly an independent contractor.
The vital test is to be found in the fact that the employer has or has not retained the right of control or superintendence over the contractor or employee as to details.
Many cases are plainly on one side of the equation and may be readily classified as showing the relation of master and servant. Others are just as plainly to be deemed cases of independent contract. *Page 16 
But men are prone to assume the existence of one fact because of the existence of another. And so, oftentimes, the facts are not so definite or the terms of the contract are not so concise and clear as to permit ready and categorical classification without consideration of other circumstances which tend to show into which class the particular case should fall.
What, then, are the elements which ordinarily earmark a contract as one creating the relationship of employer and independent contractor? The cited cases and the authorities generally give weight and emphasis, amongst others, to the following:
The person employed (a) is engaged in an independent business, calling, or occupation; (b) is to have the independent use of his special skill, knowledge, or training in the execution of the work; (c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing the work rather than another; (e) is not in the regular employ of the other contracting party; (f) is free to use such assistants as he may think proper; (g) has full control over such assistants; and (h) selects his own time. Young v. Lumber Co., supra; Bryson v. Lumber Co.,supra; Construction Co. v. Holding Corporation, supra; Royal v. Dodd,177 N.C. 206, 98 S.E. 599; Midgette v. Mfg. Co., 150 N.C. 333,64 S.E. 5; Blake v. Ferris, 5 N.Y. 48; Harrison v. Collins,86 Pa., 153; Corbin v. The American Mills, 27 Conn. 274; Smith v. Belshaw, 89 Cal. 427; Allen v. Willard, 57 Pa., 374; Deford v. State,30 Md. 179; Wiese v. Remme, 140 Mo. 289, 41 S.E. 797; Litts v. RisleyLumber Co., 19 A.L.R., 1147; Leet v. Block, 182 Ind. 271,106 N.E. 373; Anno. 19 A.L.R., 243, 1210; Re Murray, supra;Mattocks v. Emerson Drug Co., 33 S.W.2d 142; Industrial Commission v.Hammond, 236 P. 1006; Morton v. Day Coal Co., 192 Iowa 160,180 N.W. 905; Provensano v. Div. of Industrial Accidents, 294 P. 71, 27 Am. Jur., 485; 14 R. C. L., 74; Anno. 20 A.L.R., 755, 766, 790; 19 A.L.R., 1168.
The presence of no particular one of these indicia is controlling. Nor is the presence of all required. They are considered along with all other circumstances to determine whether in fact there exists in the one employed that degree of independence necessary to require his classification as independent contractor rather than employee.
Thus, in applying various combinations of these tests, it has been held that the following are independent contractors:
One who undertakes to cut timber, Young v. Lumber Co., supra; Bryson v.Lumber Co., supra (a compensation case), or to cut shingles, Royal v. Dodd,177 N.C. 206, 98 S.E. 599, for compensation on a quantitative basis; one who, being engaged in the trucking business, agrees to move a quantity of hay at a per diem for his services, Flickenger *Page 17 v. Industrial Accident Commission, 181 Cal. 425, 19 A.L.R., 1150 (a compensation case); an electrician employed from time to time to install and repair electric equipment, Sechrist v. Kurtz Bros., 24 A.2d 128
(a compensation case); a painter who contracts to paint smoke stacks for a lump sum, Litts v. Risley Lumber Co., supra (a compensation case); one who is engaged to exterminate bedbugs in an apartment house, Medley v. TrentonInvestment Co., 205 Wis. 30, 76 A.L.R., 1250; one who is employed to move machinery in a factory according to plans on a percentage of cost basis, Carleton v. Foundry and Mach. Products Co., 199 Mich. 148, 19 A.L.R., 1141 (a compensation case); one who contracts to sink a well at an agreed price per foot, Westover v. Hoover, 88 Neb. 201, 19 A.L.R., 215; one who engages to transfer freight at so much per ton, Smith v. StateWorkmen's Ins. Fund, 262 Pa., 286, 19 A.L.R., 1156; one who contracts to blast, break, haul, and deliver designated quantities of rock at a stipulated price per ton, Stricker v. Industrial Commission,55 Utah 603, 19 A.L.R., 1159 (a compensation case); one who engages to brick in newly installed boilers for a lump sum, Joseph v. Philip Henrici Co., 137 Ill. App. 171; one who is hired to paint a house for a lump sum, Francis v.Johnson, 127 Iowa 391, 101 N.W. 878; a plumber called to do repair work,Bennett v. Truebody, 6 P. 329; a mechanic who repairs an elevator, Floriv. Dolph, 192 S.W. 949; a scaffold builder employed by a painter to construct a scaffold for the use of his servants, Devlin v. Smith,89 N.Y., 407, 42 Am. Rep., 311; one who engages to do repair work on a house for a stipulated price, Russell v. Buckhout, 34 N.Y. Supp., 271; one who undertakes to erect boiler and smoke stacks,Cash v. Casey-Hedges Co., 139 Tenn. 179; one who agrees to paper walls and ceilings and to do certain painting for a lump sum, SouthwesternTeleg. and Teleph. Co. v. Paris, 87 S.W. 724; one who agrees to provide the material and construct a sidewalk in front of a building for a lump sum, Independence v. Slack, 134 Mo. 66; a farmer who agrees to haul a boiler from a railroad station, See v.Leidecker, 152 Ky. 724, or to remove an engine for a lump sum, McNally v.Diamond Mills Paper Co., 223 N.Y. 83, 119 N.E. 242; one who engages to move a house for a lump sum, Wilbur v. White, 56 A. 657; one who agrees to install an elevator and put it in running order, Parkhurst v. Swift, 68 N.E. 620; Long v. Moon, 17 S.W. 810; a carpenter who agrees to do certain work for a stipulated sum, Kipp v. Oyster, 114 S.W. 538; one who agrees to tear down a building, retaining one-half of the brick and joists as his compensation, Thurston v. Kansas City Terminal R. Co., 168 S.W. 236; a mechanic called to repair machinery on the premises, payment to be made for the completed piece of work, Texas RefiningCo. v. Alexander, 202 S.W. 131; a person who undertakes to clear a certain piece of land *Page 18 
at a specified price per acre, Wright v. Holbrook, 52 N. H., 120; public draymen employed to cart certain barrels for so much per barrel, De Forrestv. Wright, 2 Mich. 368; a mechanic engaged to overhaul automobile engine at $20.00 per week, Woodcock v. Sartle, 146 N.Y. Supp., 540; a painter who agrees to paint and erect signboards, Simonton v. Morton, 119 A. 732.
Careful consideration and analysis of the facts in the light of the cited authorities leads us to the conclusion that the deceased was an independent contractor. Lovett in the beginning expressly declined to employ by the hour. Deceased and his associates were skilled electricians. They were not regularly employed by defendant, but by the Duke Power Company. They engaged extra jobs requiring their special type of skill during their "off" hours. They undertook to perform stipulated work as a whole for a specified sum, and defendant had no control over the division of the compensation. They were not required to report either before beginning or after quitting work, but were free agents as to their hours of labor. The work was to be done at their convenience, and it was left to them to decide when and where to begin and when to "kill" the electricity. They followed their own judgment as to the manner and method of setting the poles and transferring and connecting the wires. After deceased was killed his associates selected extra help to replace deceased and completed the work. Defendant could not discharge deceased or either of his associates without incurring liability for breach of contract. At the same time it had the right to insist that the work should be completed before any payment was made.
These circumstances fail to disclose that the parties to the contract contemplated or intended that the defendant or its representatives should have any right to control or direct the details of the work or what the workmen should do as the work progressed. The opposite conclusion is required.
The fact that defendant furnished a truck and two helpers and loaned a saw, shovel, and pipe poles does not tend to destroy the independency of the contract. Gay v. R. R., supra; Vogh v. Geer, supra; Beach v. McLean,supra; Litts v. Risley Lumber Co., supra; Emerson v. Fay, 94 Va. 60;Perham v. American Roofing Co., 193 Mich. 221, 159 N.W. 140; Miller v.Minnesota and N.W. Ry. Co., 76 Iowa 655, 39 N.W. 185, 14 R. C. L., 73, 84.
The discussion as to whether the trees should be trimmed or the poles shortened took place before the work was begun and related to the general nature of the work to be performed and the general plan to be followed. While worthy of some consideration, this circumstance does not evidence the right to control the details of the work to the extent necessary to create the relation of employer and employee. On this record it is not *Page 19 
inconsistent with the conclusion that the electricians were independent contractors. Denny v. Burlington, supra; Hopper v. Ordway, 157 N.C. 125,75 S.E. 838; Johnson v. R. R., 157 N.C. 382, 72 S.E. 1057; Embler v.Lumber Co., supra; 14 R. C. L., 70; Anno. 20 A.L.R., 687; Lutenbacher v.Mitchell-Borne Constr. Co., 19 A.L.R., 206.
But plaintiffs insist that the rule of liberal construction applies in cases arising under the Workmen's Compensation Act and that this rule should be invoked to resolve any doubt in favor of plaintiffs. In answer to this argument we need only to point out that this rule is an interstitial one, benefiting the injured party only in those cases where the Act applies. It cannot be invoked to determine when the Act does apply.
The doctrine of liberal construction arises out of the Act itself, and relates to cases falling within the purview of the Act. Until it is adjudicated affirmatively that the employer-employee relationship existed at the time of the accident no construction or interpretation of the Act — liberal or otherwise — comes within the scope of judicial inquiry.
By express terms the Act applies only where the employer-employee relationship exists. Sec. 8081 (1), Michie's N.C. Code of 1939; G.S.,97-2; Winslow v. Carolina Conference Association, 211 N.C. 571,191 S.E. 403; Lee v. American Enka Corp., 212 N.C. 455, 193 S.E. 809.
Except as to public officers the definition of "employee" contained in the Act adds nothing to the common law meaning of the term. Nor does it encroach upon or limit the common law meaning of "independent contractor."Bryson v. Lumber Co., supra; Beach v. McLean, supra. The Act includes only the one and thus excludes the other. Expressio unius exclusio alterius.
Hence, in judicially determining the preliminary question of coverage the terms "employee" and "independent contractor" must be given their natural and ordinary meaning and effect. It must be presumed, nothing else appearing, that they are used in their accepted legal sense. Asbury v. Townof Albemarle, 162 N.C. 247, 78 S.E. 146; C. T. H. Corporation v.Maxwell, Comr. of Revenue, 212 N.C. 803, 195 S.E. 36; Pacific Gas andElec. Co. v. Industrial Accident Com., 180 Cal. 497, 181 P. 788; 2 Sutherland Statutory Construction, 3rd Ed., pp. 438-441, 28 R. C. L., 754, 71 C. J., 341, 417.
The courts are without authority to enlarge the meaning of the terms used by the Legislature or to extend by construction its scope and intent so as to include persons not embraced by its terms. Carsten v. Departmentof Labor and Industries, 172 Wn. 51; Cornet v. City of Chattanooga, 165 Tenn. 563, 56 S.E.2d 742; Spivey and McGill v. Nixon, 163 Okla. 278,21 P.2d 1049; Knudson v. Jackson, 191 Iowa 947, 183 N.W. 391;Birmingham Post Co. v. Sturgeon, 149 So. 74; McDonald *Page 20 v. City of New Haven, 109 A. 176, 10 A.L.R., 193; Mann v. City ofLynchburg, 129 Va. 454, 106 S.E. 371, 71 C. J., 417.
One who seeks to avail himself of the Act must come within its terms and must be held to proof that he is in a class embraced in the Act. Knudson v.Jackson, supra; Bingham City Corporation v. Industrial Commission of Utah,243 P. 113; Spivey and McGill v. Nixon, supra; Mobley v. Brown,151 Okla. 167, 83 A.L.R., 1014; Hamilton v. Randall, 276 P. 705; Harrisv. Oklahoma Natural Gas Co., 216 P. 116; El Reno Broom Co. v. Roberts,281 P. 273. See also 71 C. J., 341.
As plaintiffs have failed to show that they are dependents of an employee of defendant Board who suffered death by accident arising out of and in the course of his employment the judgment below must be
Reversed.