***********
The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Chapman. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except for minor modifications; therefore, the Full Commission AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. If defendant-employer, Spell Construction Company, Inc., is liable on the claim as employer then Continental Casualty Company is the carrier on the risk.
In addition, the parties stipulated into evidence:
1. A packet of twenty-three pages of medical records and reports.
2. A packet of documents including Industrial Commission forms, correspondence, payment records and other items specified in the Pre-Trial Agreement.
The Pre-Trial Agreement dated March 4, 2002, which was submitted by the parties, is incorporated by reference.
 ***********
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff was thirty-eight years old at the time of the deputy commissioner hearing in this matter. Plaintiff has a tenth grade education and began working for defendant-employer in late 1999.
2. Defendant-employer was a general contractor in commercial construction who built and remodeled schools, restaurants and Burger Kings. Plaintiff was hired primarily to perform carpentry work. Plaintiff installed laminate, built door partitions, and put up framing for walls and other structures. During the first nine to ten months that plaintiff worked for defendant-employer, he was paid $1,000.00 per week while working on jobs with the company. There would occasionally be short periods of time between jobs when there was not another project immediately available, and plaintiff would not get paid during the interim period. Plaintiff had to travel in order to perform his job. Plaintiff worked on several Burger Kings in Atlanta, one near Charleston and one in Winston-Salem. Plaintiff also worked on schools in the Fayetteville area. While working so far from his home in Waxhaw, plaintiff's motel expenses were paid by defendant-employer.
3. In September 2000, Mike Spell, owner of the company, informed plaintiff that he wanted plaintiff to become self-employed and to sign a subcontractor agreement. On September 21, 2000, plaintiff signed some sort of agreement with defendant-employer, but the specific terms of the agreement were not disclosed since it was not placed into evidence. Thereafter, plaintiff quoted a price for a job and was paid the amount quoted, although the payments were made in weekly installments based upon the progress of the work. Over the next several months, plaintiff obtained a workers' compensation insurance policy and placed a sign on his truck which said, "Kirk Enterprises". Plaintiff also hired one or more helpers, whom he paid from what he was paid by defendant-employer.
4. On March 30, 2001, plaintiff and his son were working on a Burger King in Asheboro and they were installing framing over the front counter area. As plaintiff was walking across a low wall, he slipped on a piece of plastic and fell, severely twisting his right knee. An ambulance was summoned and plaintiff was taken to the local hospital where the emergency room physician placed his knee in an immobilizer, prescribed medication for him, and instructed him to see an orthopedic surgeon.
5. Plaintiff returned to Waxhaw and subsequently saw Dr. Jaffe, an orthopedic surgeon, on April 20, 2001. Dr. Jaffe ordered an MRI, which revealed a large tear of his right anterior cruciate ligament, a sprain or partial tear of his medial collateral ligament, and some compression of the bone surfaces in his knee. In view of the findings, Doctor Jaffe recommended surgery.
6. Defendant-employer's workers' compensation carrier denied plaintiff's workers' compensation claim, as did his own workers' compensation insurance company since he had excluded himself from coverage. Consequently, there was a delay before plaintiff could obtain funding for the recommended surgery. However, on August 22, 2000 Dr. Jaffe operated on plaintiff's knee to repair torn cartilage and to reconstruct his anterior cruciate ligament.
7. Dr. Jaffe followed plaintiff's recovery until his deposition was taken in March 2001. Having sustained such a severe injury, plaintiff was still not at maximum medical improvement at that time and required additional rehabilitation to strengthen his leg muscles before Dr. Jaffe would release him to return to work.
8. At issue in this case is whether plaintiff was an employee of defendant-employer on March 30, 2001 when he clearly injured himself due to an accident arising out of and during the performance of his work duties. An employment relationship did not exist between the parties for the following reasons. By the date of injury, plaintiff was holding himself out as an independent contractor, having obtained insurance coverage and having labeled his truck with his company name. When not working for defendant-employer, plaintiff worked for other companies. Plaintiff had enough experience with the type of work involved such that he did not require supervision and used his independent knowledge and skill while working on a project. There was a disagreement between the parties regarding how plaintiff was being paid. Plaintiff's allegation that he was being paid by the hour has not been accepted as factual. Rather, he gave a price for the work to be done which was based upon his estimate of the time it would take to complete the job, and he was paid that amount in installments. Most importantly, plaintiff was free to hire assistants and did, in fact, employ his son to help him perform the job in question. Plaintiff's son worked under his supervision and was paid by plaintiff from the total amount he received for the project. Plaintiff did not have set hours but worked under a time deadline for completing the job. Although the building materials were supplied by defendant-employer, plaintiff provided all of the tools necessary to do the work.
9. There were factors that would point towards an employment relationship, such as the fact that defendant-employer paid for plaintiff's lodging expense; and it did appear that plaintiff initially worked for the company as an employee and not as an independent contractor. However, the nature of the relationship changed in September and October 2000. The greater weight of the evidence fails to establish that defendant-employer directed the method and means to perform the work that plaintiff was working when he was injured. Rather, the greater weight of the evidence indicates that defendant-employer provided plaintiff with the project schedule used for coordinating the various trades in performing the construction project and inspected the final product to assure that it was in accordance with the plans. These efforts do not rise to the level of control necessary to establish an employer-employee relationship. The greater weight of the evidence is that plaintiff was an independent contractor at the time and place of his injury.
10. Although defendant-employer did not require plaintiff to produce a certificate of workers' compensation insurance prior to the injury in question, plaintiff was not an employee of a subcontractor but was the actual subcontractor, so the omission did not affect the liabilities of the parties.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On March 30, 2001, when plaintiff sustained the injury giving rise to this claim, he was not an employee of defendant-employer, but rather was an independent contractor. Consequently, his injury by accident on that date did not arise out of and in the course of an employment relationship with the company. N.C.G.S. § 97-2; Hayes v. Board ofTrustees of Elon College, 224 N.C. 11 (1944).
2. Although defendant-employer as general contractor did not require plaintiff to produce a certificate of workers' compensation insurance prior to the injury in question as required by N.C.G.S. § 97-19, as of the date of this injury, the statute only provided for coverage of employees of subcontractors and not the subcontractor himself. Consequently, plaintiff as the actual subcontractor was not covered, so defendants would not be liable for his injuries under that section. N.C.G.S. § 97-19.
3. Plaintiff is not entitled to benefits under the Workers' Compensation Act for the injuries he sustained on March 30, 2001. N.C.G.S. § 97-2 et seq.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission AFFIRMS the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Plaintiff's claim under the law must be and is hereby DENIED.
2. Each side shall bear its own costs.
This the ___ day of July 2003.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER