***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Glenn, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The Industrial Commission denied defendant's motion to dismiss, and defendant contends the Industrial Commission does not have jurisdiction because plaintiff is not an employee pursuant to the Workers' Compensation Act.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder or parties.
3. Plaintiff's average weekly wage was $373.38 at all relevant times herein.
4. The Pre-Trial Agreement along with its attachments and any stipulations that have been submitted by the parties are hereby incorporated by reference as though they were fully set out herein.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 46 years old. He graduated from high school in 1974, and took courses at Wayne Community College before obtaining his Federal Aircraft Mechanics' License in 1979.
2. Plaintiff began working for Arrow Group Limited, which operates as Freedom Air Aviation ("Freedom Air"), on August 7, 2000, as an aircraft mechanic. Plaintiff initially approached David Riggsbee, the owner of Freedom Air, to discuss the possibility of opening his own repair shop at the Person County Airport. Mr. Riggsbee refused to allow him to open his own shop, but told him he could work for Freedom Air. When plaintiff was hired by Mr. Riggsbee to work for Freedom Air, he neither owned nor operated an independent aircraft repair business; additionally, he was not seeking employment as an independent contractor.
3. Plaintiff was hired to work for Freedom Air at the rate of $15.00 an hour. His work for Freedom Air was of indefinite duration. Plaintiff was paid by the hour, and not by the job, for the duration of his employment with Freedom Air. The owners of the airplanes on which plaintiff worked brought their airplanes to Freedom Air for repair work, and Freedom Air charged the owners for the work performed by plaintiff.
4. There is contrary evidence as to the understanding of the parties regarding plaintiff's status as an employee or an independent contractor. Although Mr. Riggsbee testified that he informed plaintiff that he would be an independent contractor at the time he was hired, it is apparent from the record that Mr. Riggsbee did not make an effort to assess whether plaintiff understood the meaning or significance of such designation. Plaintiff testified that he had no say in the determination of his employment status, specifically regarding the fact that his taxes would be reported by a Form 1099, rather than a Form W-2, pursuant to the Internal Revenue Code. Plaintiff testified that he was not aware that Freedom Air had not withheld taxes on his behalf until he prepared his taxes following his first year of employment. Further, plaintiff testified that in every prior job in which he was employed as an aircraft mechanic, he was always considered an employee and reported earnings by a Form W-2.
5. Mr. Riggsbee stated at hearing before the Deputy Commissioner that, in his view, Arrow Group does not employ any employees, but does "retain the services of probably three or four professionals." Mr. Riggsbee went on to testify that he considers mechanics licensed by the FAA to be "professionals," who are independent contractors. Mr. Riggsbee admitted that plaintiff was paid per hour, and not by job, and that he could discharge plaintiff at any time.
6. Plaintiff testified that he initially punched a time clock to record the hours he worked for Freedom Air. When the time clock stopped working, the time records were kept manually. Plaintiff was provided a time detail printout of his hours worked with each paycheck from Freedom Air.
7. The time detail printouts that accompanied plaintiff's paychecks initially bore the heading "Labor Rate Calculator" at the top of each page. When plaintiff returned to work on February 8, 2001, following his injury, the time details that he received with his paychecks bore the heading "Employee Time Detail for JS (James Sessoms)." The time detail printouts listed the in and out times for each client of Freedom Air for whom Plaintiff was assigned to work.
8. Defendant presented time details at the hearing that were similar to those given to plaintiff with his paychecks; however, the word "employee" had been removed from the top of the sheets. These documents were printed on May 9, 2002, just 15 days prior to the hearing before the Deputy Commissioner. Mr. Riggsbee was unable to explain why the word "employee" had been deleted from the time details printed shortly before the hearing when the word had originally appeared on the time details given to plaintiff with his paychecks.
9. Plaintiff provided some of his own hand tools in which to perform his job; however, Freedom Air provided specialized tools and large equipment, such as a prop balancer and airplane jacks. Thomas Finkenbinder, plaintiff's co-worker, was initially considered by Freedom Air to be an independent contractor but had been officially hired as an employee by the time of hearing before the Deputy Commissioner. Mr. Finkenbinder testified that he continues to supply his own hand tools even though he is now considered by Freedom Air to be an employee.
10. On December 1, 2000, plaintiff suffered an injury to his left arm while exiting an airplane on which he was working at Freedom Air. Plaintiff testified that the cables on the steps of the plane snapped, causing him to hyper-extend his left arm as he attempted to hold on to the plane to avoid striking his head on the concrete floor that was several feet below.
11. Patty Carver of Freedom Air took plaintiff to Person Memorial Hospital, where he was treated following the incident at work. He was then referred to J. Lawrence Frank, M.D., of Triangle Orthopaedic Associates for further evaluation and treatment.
12. Dr. Frank first saw Plaintiff on December 5, 2000, at which time he diagnosed plaintiff as having a torn left biceps tendon. Dr. Frank performed a repair of plaintiff's left biceps tendon at Durham Regional Hospital on December 15, 2000. Plaintiff continued to treat with Dr. Frank until May 1, 2001, when Dr. Frank assigned plaintiff a ten percent (10%) permanent partial impairment rating to the left arm.
13. Plaintiff was out of work for approximately ten weeks as a direct result of the injury he sustained at work. He returned to work on February 8, 2001, but worked under restrictions and at reduced hours until the week of April 2, 2001. Plaintiff worked for Freedom Air until May 15, 2001. The record indicates plaintiff left his employ with defendant for reasons not related to this claim.
 ***********
Based upon the foregoing findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. The courts, as noted below, have developed an analysis by which to determine the type of employment relationship that exists at the heart of an employment relationship. In determining whether a party is an employee or an independent contractor for purposes of the Workers' Compensation Act, it is well settled that there are eight factors that indicate classification as an independent contractor: the person employed (a) is engaged in an independent business, calling, or occupation; (b) is to have the independent use of his special skill, knowledge, or training in the execution of the work; (c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing the work rather than another; (e) is not in the regular employ of the other contracting party; (f) is free to use such assistants as he may think proper; (g) has full control over such assistants; and (h) selects his own time. McCown v. Hines, 140 N.C. App. 440, 537 S.E.2d 242 (2000), citingHayes v. Elon College, 224 N.C. 11, 16, 29 S.E.2d 137, 140 (1944). No one factor is determinative. Id.
2. The Full Commission finds the Court's declaration that not one of the above factors is determinative to be of important note. In the present case, the defendant contends that plaintiff is an independent contractor, and not subject to the Workers' Compensation Act, because: plaintiff was paid hourly with no set work hours; he had control over the manner in which he could work; he used his own tools; he was free to work for other contractors or employers, and could employ an assistant; he did not have taxes withheld from his pay and was provided a Form 1099. While all of these factors are important in considering plaintiff's employment status, they are not determinative and do not collectively create a presumption that plaintiff was an independent contractor.
3. The evidence of record shows that there is contrary evidence as to the understanding of the parties regarding plaintiff's status as an employee or an independent contractor. Further, the record is clear that plaintiff worked nearly full time for Freedom Air, and neither had a business as an independent contractor or worked by virtue of such status with any other employer or contractor. Although plaintiff provided his own set of tools, there were several large pieces of equipment that Freedom Air provided that otherwise would have prevented plaintiff from performing the job absent their use.
4. As further evidence of plaintiff's employment status with Freedom Air, defendant argued that plaintiff could have employed an assistant; however, there is no evidence that plaintiff had the means to do so given his $15 per hour rate of pay, or that employing an assistant was common among the other alleged independent contractors who worked at Freedom Air. Moreover, there is no evidence that an independent contractor employment relationship was typical among aircraft repair businesses. Of important note is that Thomas Finkenbinder, who Freedom Air initially considered an independent contractor, testified that he has since been made an employee of Freedom Air and continues to supply his own tools despite the change in his employment status. Finally, plaintiff testified that he was, in fact, not at liberty to bring in an assistant because Mr. Riggsbee did all the hiring and firing at Freedom Air.
5. The Full Commission finds the following language from the Court of Appeals' holding in Durham v. McLamb, 59 N.C. App. 165, 296 S.E.2d 3
(1982), to be analogous to the present case and instructive regarding the issue of plaintiff's employment status:
 [T]he fact that (1) both plaintiff and defendant assumed plaintiff was self-employed; (2) plaintiff did not have regular working hours; (3) defendant did not withhold taxes from plaintiff's pay; and (4) plaintiff was skilled in his job, so that he needed very little, if any, supervision are not determinative of the issue of what relationship existed between plaintiff and defendant; nor is the fact that in this case, plaintiff provided his own work tools. . . . [W]e find the following factors to be determinative: (1) plaintiff was working for an hourly wage and not for a contract price; (2) plaintiff worked full time for defendant; (3) defendant could discharge plaintiff at any time; (4) plaintiff did not have a business as an independent contractor. Id.
6. The Industrial Commission has jurisdiction over the parties and the subject matter of this action. N.C. Gen. Stat. § 97-3.
7. Defendant was the employer of plaintiff at the time of his injury by accident on December 1, 2000. N.C. Gen. Stat. § 97-2(3); Durham v.McLamb, 59 N.C. App. 165, 296 S.E.2d 3 (1982); and McCown v. Hines,140 N.C. App. 440, 537 S.E.2d 242 (2000).
8. Plaintiff was an employee of defendant on December 1, 2000 at the time of his injury by accident. N.C. Gen. Stat. § 97-2(2); Durham v.McLamb, 59 N.C. App. 165, 296 S.E.2d 3 (1982); and McCown v. Hines,140 N.C. App. 440, 537 S.E.2d 242 (2000).
9. On December 1, 2000, Plaintiff sustained an injury by accident to his left arm arising out of and in the course of his employment with defendant. N.C. Gen. Stat. § 97-2(6).
10. As a direct and proximate result of his compensable injury, plaintiff would be entitled to temporary total disability compensation at the rate of $249.04 per week for the period beginning December 1, 2000, and continuing until he returned to work on February 8, 2001. pursuant to N.C. Gen. Stat. § 97-29. Additionally, plaintiff would be entitled to temporary partial disability compensation totaling $911.76 for the period from February 8, 2001 until Plaintiff returned to regular duty work on or about April 2, 2001, pursuant to N.C. Gen. Stat. § 97-30. However, plaintiff sustained a 10 % permanent partial disability to the arm and is entitled to make an election of the more munificent remedy. Here, compensation for plaintiff's permanent partial disability is the more munificent remedy and he is deemed to have chosen that. For a 10% rating to the arm, plaintiff is entitled to receive 24 weeks of permanent partial disability compensation, rather than approximately 10 weeks of temporary total disability combined with $911.76 in temporary partial disability compensation. Accordingly, an award for permanent partial disability compensation per N.C. Gen. Stat. § 97-31 is the more favorable remedy available to plaintiff, and he shall be awarded that benefit "in lieu of" compensation for temporary total disability and temporary partial disability. N.C. Gen. Stat. § 97-31.
12. Plaintiff is entitled to have defendant provide all medical treatment arising from this injury by accident to the extent it tends to effect a cure, give relief or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff permanent partial disability compensation benefits for 24 weeks at the rate of $249.04 per week commencing on May 1, 2001, subject to the attorney's fees provided below.
2. Defendants shall pay for all medical expenses incurred or to be incurred by plaintiff as a result of the compensable injury when bills for same have been submitted to and approved by the Industrial Commission, for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability.
3. Defendant shall pay to plaintiff's counsel a reasonable attorney's fee of twenty-five percent (25%) of the compensation due plaintiff under Paragraph 1 of this award, which shall be deducted from the sum due plaintiff.
4. Defendant shall pay the costs due the Commission.
This 15th day of March 2004.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER