***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Griffin and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Griffin with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the court and that the court has jurisdiction over the parties and over the subject matter. *Page 2 
2. Plaintiff alleges to have sustained an injury by accident on October 3, 2006 when a roof that he was working on collapsed. Defendants have denied claimant's workers' compensation claim, alleging that there is no employee/employer relationship.
3. On October 3, 2006, the workers' compensation carrier for the Bowman Business Associates, Inc. was Travelers Insurance Company.
4. All parties have been correctly designated and that there is no question as to misjoinder of nonjoinder of parties.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a 26 year old married man with two children. Plaintiff has a 10th grade education and has worked in construction, as an electrician's helper and as a roofer.
2. In September of 2006, plaintiff contacted Ken Bowman, owner of Bowman Business Associates, and inquired about possible employment as a roofer. Mr. Bowman also had a roofing business, Blue Ridge Roofing, which was a subsidiary of Bowman Business Associates.
3. At their initial meeting plaintiff reviewed a "draft" Subcontractor Pay Schedule, which outlined options for plaintiff's pay for roofing work. It was agreed that plaintiff would be paid by the square. Furthermore, the pay would be at a higher rate if plaintiff had his own workers' compensation insurance. If not, then plaintiff would be paid at a lower rate. Because *Page 3 
plaintiff informed Mr. Bowman that he did not have workers' compensation insurance, it was agreed that plaintiff would receive the lower rate of pay.
4. Mr. Bowman also informed plaintiff that he could hire two helpers to assist in the roofing projects. Mr. Bowman provided a list of specific rules and regulations that plaintiff and his helpers were required to follow. Specifically, Mr. Bowman reserved the right to fire plaintiff and/or his helpers immediately. Plaintiff was required to place Blue Ridge Roofing signs on the job sites and could not advertise or even mention Holman's Roofing on a job site. Mr. Bowman explained that plaintiff and his helpers were to stop working and leave the job sites each day by 5:00 p.m. to avoid disturbing the home owners during the evening hours. Plaintiff would bring his own tools, but Mr. Bowman would provide all materials needed to perform the work. Furthermore, Mr. Bowman reviewed the manner in which he expected the roofing jobs to be performed, including the number of nails per shingle.
5. The seven page document titled "Blue Ridge Roofing Company Subcontractor Agreement" which was discussed during the initial meeting but not signed by the parties contained manyof the topics the parties had previously discussed. The document set forth a litany of additional rules that plaintiff and his crew needed to comply while working with Mr. Bowman's company. The document indicated that Blue Ridge Roofing Company reserved the right to terminate any worker who did not abide by certain standards of conduct while on the job site. In the event of an accident on the job site, the injured worker was required to immediately report the incident to Blue Ridge Roofing Company and then submit to a blood test at a local hospital. The document provided that Blue Ridge Roofing Company would set forth the specifications of the work to be performed, which included the job site location, materials, expected start and completion dates, as well as other details associated with execution of the *Page 4 
work order. The exact times at which plaintiff and his helpers were expected to begin the work day and the requirement that Blue Ridge Roofing Company be notified in the event of unsuitable weather were also included as terms of the document. Finally, the document provided that all work needed to be performed by specifications dictated by Blue Ridge Roofing Company and that the worker would not be compensated for any work performed until all specifications were met.
6. Plaintiff provided the business name of "Holman's Roofing" for completion of the tax information to Mr. Bowman who was to submit a 1099 Tax Form at the end of the year.
7. From September 25, 2006 through September 29, 2006, Blue Ridge Roofing Company hired plaintiff as roofer to remove and dispose of old shingles from an existing roof, install flashing, replace ply board and felt, and to install new shingles. Plaintiff retained two helpers to help him with the roofing work.
8. During this work period Mr. Bowman and/or his associate came out to the job site approximately 6 times to inspect the work in progress. At one point Mr. Bowman instructed plaintiff and his two helpers to tear off part of the roof and redo the shingles because the shingles did not comply with Blue Ridge Roofing Company's nail policy. Mr. Bowman also instructed plaintiff to install the flashing so there was 8 inches of exposure instead of only 6 inches. Plaintiff was paid for his and his two helpers' work $65.00 per square for 16 squares and $10.00 for gas, which totaled $1,050.00.
9. On October 3, 2006, plaintiff's next roofing job with Blue Ridge Roofing Company began. Plaintiff was informed that he would receive $1,600.00 upon completion of the roofing work. However, on the first day of the job the roof collapsed while plaintiff was working on it. As a result, plaintiff fell approximately 15 feet and landed on his head. *Page 5 
10. In the instant case, the working relationship between plaintiff and Blue Ridge Roofing Company parallels the relationship between an employee and employer. Although plaintiff was paid at a fixed price for his work, allowed to select his own helpers to complete the job and signed a Subcontractor Agreement, these factors do not conclusively establish that plaintiff was an independent contractor for Blue Ridge Roofing Company. Blue Ridge Roofing Company exercised almost complete control over the job to be performed. Blue Ridge Roofing Company set the hours to be worked, the specifications of how the work was to be performed, including the exact number of nails to be used per shingle and the exact inches of flashing to be exposed. Blue Ridge Roofing Company provided all of the materials for the job, performed regular inspections of the job as it progressed and required work to be redone if it did not meet the company's specifications. Blue Ridge Roofing Company reserved the right to terminate plaintiff or any of his helpers if they failed to abide by the standards of conduct set forth. Plaintiff was also limited to hiring no more than two helpers. Most importantly, Blue Ridge Roofing Company paid plaintiff at a lower rate of pay because plaintiff did not have workers' compensation insurance on himself or for his helpers. It was plaintiff's understanding that he would receive the lower rate of pay in exchange for being covered by Blue Ridge Roofing Company's workers' compensation insurance policy. Based on the greater weight of the evidence, plaintiff was an employee of Blue Ridge Roofing Company.
11. Following plaintiff's fall on October 3, 2006, plaintiff was taken to Watauga Medical Center where he was diagnosed with a Type 3 odontoid fracture, a fracture of the right lamina at C-6, a fracture of the transverse process at C-7 and compression fractures at T-3 and T-4. Due to the serious nature of plaintiff's injuries, he was airlifted to Carolinas Medical Center, where he was also diagnosed with a right C6-C7 jumped fractured facet, as well as a C-2 right *Page 6 
lateral mass fracture. On October 4, 2006, plaintiff underwent surgery performed by Dr. Craig VanDerVeer, a neurosurgeon and on October 6, 2006, was discharged from the hospital.
12. Over the next year plaintiff continued under the care of Dr. VanDerVeer. By June 20, 2007, Dr. VanDerVeer opined that the burning, pain and numbness in plaintiff's shoulder would take approximately 18 months to completely resolve. He continued plaintiff out of work for another month. In July of 2007, Dr. VanDerVeer released plaintiff to return to regular duty work. At the time of his work release, plaintiff was still experiencing chronic pain in his neck, chronic headaches and numbness and weakness in his upper extremities.
13. On September 26, 2007, Dr. VanDerVeer assigned plaintiff a 10% permanent partial disability rating to his back.
14. Dr. VanDerVeer opined to a reasonable degree of medical certainty and the undersigned so accepts as fact, that plaintiff's injuries and resulting surgery were caused by his fall from the roof on October 3, 2006.
15. Since his full work release from Dr. VanDerVeer, plaintiff testified he has contacted at least 60 construction companies that he located in the telephone book, but did not receive any offers of employment. He also applied in person for an automotive job where his father works, but was not hired due to the fact that he did not hold a valid driver's license. As of the date of the hearing before the Deputy Commissioner, plaintiff had not returned to work. Plaintiff has failed to establish by the competent, credible evidence that he remains disabled as a result of his compensable injury subsequent to his full duty work release.
16. Plaintiff was paid a total of $1,050.00 for work performed by him and his two assistants between September 25, 2006 and September 29, 2006. Plaintiff and his assistants were scheduled to receive a total of $1,600.00 for completion of the roofing job on which he sustained *Page 7 
his injuries. Plaintiff estimated that the job where he was injured would have taken about one week to complete. However, there is insufficient evidence of record from which to determine the amount of wages plaintiff received from the lump sum he was paid for work which he and his two helpers performed. Thus, an average weekly wage cannot be determined based on this record.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff bears the burden of proving the existence of an employer-employee relationship in this matter. Hughart v. DascoTransport, Inc., 167 N.C. App. 685, 689, 606 S.E.2d 379, 382 (2005). Plaintiff has established by the greater weight of evidence that such a relationship existed between Blue Ridge Roofing and him at the time of his accident on October 3, 2006. Hayes v. Board of Trustees of ElonCollege, 224 N.C. 11, 29 S.E.2d 137 (1944).
2. On October 3, 2006, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment when he fell 15 feet from a collapsed roof. N.C. Gen. Stat. § 97-2(6).
3. Plaintiff was released to return to full duty work by his treating physician, Dr. VanDerVeer, approximately 4 weeks following his June 20, 2007 evaluation. Plaintiff has not demonstrated by the greater weight of the evidence that he continues to be disabled because of the October 3, 2006 incident. Russell v. Lowes Product Distribution, 108 N.C. App. 762,425 S.E. 2d 454 (1993). Thus, plaintiff is not entitled to temporary total or temporary partial disability following his release to full duty work. N.C. Gen. Stat. §§ 97-29, 97-30. *Page 8 
4. As a result of his October 3, 2006 injury by accident, plaintiff is entitled to payment of temporary total disability compensation, payable at the weekly rate hereinafter to be determined from October 3, 2006 through July 20, 2007. N.C. Gen. Stat. § 97-29.
5. As a result of his compensable injury by accident, plaintiff has retained a 10% permanent partial disability rating to the back, for which plaintiff is entitled to compensation at the weekly rate hereinafter to be determined for a period of 30 weeks. N.C. Gen .Stat. § 97-31(23).
6. As a result of his October 3, 2006 injury by accident, plaintiff has received medical treatment and is entitled to receive further related medical treatment that would effect a cure, give relief or lessen his period of disability, subject to the limitations of N.C. Gen. Stat. § 97-25.1. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee approved herein, defendants shall pay plaintiff temporary total disability compensation at a weekly rate hereinafter to be determined beginning October 3, 2006 and continuing until July 20, 2007. Said amount having accrued, shall be paid to plaintiff in one lump sum.
2. Subject to a reasonable attorney's fee approved herein, defendants shall pay plaintiff for the 10% permanent partial impairment rating to the back. Said amount having accrued, shall be paid to plaintiff in one lump sum. *Page 9 
3. Defendants shall pay the medical expenses incurred or to be incurred by plaintiff as a result of his back condition, including the surgery performed by Dr. VanDerVeer, when bills for the same have been submitted according to proper Industrial Commission procedure.
4. A reasonable attorney's fee of 25% of the compensation due plaintiff under Paragraphs 1 and 2 of this AWARD is approved for plaintiff's counsel and shall be paid by defendants as follows: 25% of the accrued compensation due plaintiff shall be deducted from said compensation and shall be paid in one lump sum directly to plaintiff's counsel.
5. IT IS HEREBY ORDERED that defendants shall pay an expert witness fee in the amount of $560.00 to Dr. Craig A. VanDerVeer for his deposition testimony, if not already paid.
6. Defendants shall pay the costs.
 ORDER
As there is insufficient evidence of record regarding the amount plaintiff received from the lump sums he was paid for work which he and his two assistants performed, this matter is hereby Ordered Remanded to Chief Deputy Commissioner Wanda Taylor for Deputy Commissioner Myra Griffin to take evidence on this issue, unless the parties sooner stipulate to the average weekly wage and corresponding compensation rate at which plaintiff should be paid.
This the 16th day of April 2009.
S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING: *Page 10 
 S/___________________ DANNY LEE McDONALD COMMISSIONER
 S/___________________ BERNADINE BALLANCE COMMISSIONER