***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Deluca and the briefs and oral arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission hereby reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. All parties are properly before the Commission, and this is the Court of proper jurisdiction for this action.
2. There is no question of joinder or non-joinder of parties.
3. Plaintiff's alleged date of injury was July 20, 2007.
4. Compensability has been denied.
5. Plaintiff's average weekly wage was $400.00 per week.
 *********** EXHIBITS
The following were marked and received into evidence by the Deputy Commissioner as:
 a. Stipulated Exhibit Number 1, Pre-Trial Agreement; and
 b. Stipulated Exhibit Number 2, Plaintiff's Medical Records and Bills, Industrial Commission Forms, Pleadings and Correspondence.
 c. Plaintiff's Exhibit Number 1, Reinstatement Request issued by MPP, dated November 30, 2006.
 d. Defendant Travelers Exhibit Number 1, Insurance Premium Finance Agreement dated August 2, 2006, containing page one only, page two not being supplied at either the hearing or post-hearing;
 e. Defendant Travelers Exhibit Number 2, 10-day Notice issued by Monthly Payment Plan, Inc., and dated January 2, 2007;
 f. Defendant Travelers Exhibit Number 3, Notice of Cancellation issued by Monthly Payment Plan, Inc. dated January 15, 2007;
 g. Defendant Travelers Exhibit Number 4, Letter from Mills River Insurance to Monthly Payment Plan dated November 20, 2006, requesting reinstatement of Defendant Smith's insurance policy;
 h. Defendant Travelers Exhibit Number 5, Letter from Mills River Insurance to Mr. Andrews dated March 4, 2007, re: no change of address for Defendant Smith in file; and
 i. Defendant Travelers Exhibit Number 6, Workers' Compensation policy, attachments and endorsements issued by Defendant Travelers on behalf of Defendant Smith.
 ***********
The following were received into evidence by the Deputy Commissioner as:
 DEPOSITIONS
1. Oral deposition of Neal Taub, M.D., taken on July 8, 2008;
2. Oral deposition of Kenneth Walter Graf, Jr., M.D., taken on July 21, 2008;
3. Oral deposition of Jerry Mark Smith, taken on July 25, 2008; and
4. Oral deposition of Ginger Schmeltzer, taken on July 25, 2008.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 39 years old and had a ninth grade education. During most of his adult life, plaintiff has performed factory and construction work.
2. Defendant Jerry Mark Smith began Smith's Home Repair in the summer of 2006.
3. Defendant Smith obtained a workers' compensation insurance policy with Travelers Insurance as an assigned risk policy by submitting an application to the North Carolina Rate Bureau, which assigned the policy to Defendant Travelers in September 2006.
4. The signature on this policy is not that of Jerry Mark Smith, but rather was executed by David Cantwell, Defendant Smith's insurance agent.
5. Defendant Smith was unable to pay his premium in full; thus, he financed his premium through a third-party known as Monthly Payment Plan (MPP).
6. Part of the application for financing with MPP was a power of attorney which allowed MPP to cancel the insurance policy if no payment was received. However, Mr. Cantwell, as Defendant Smith's insurance agent, signed the power of attorney for Defendant Smith.
7. Defendant Smith testified that he did want workers' compensation insurance and did want his premium financed. He made these desires known to Mr. Cantwell and paid the down payment for his policy to Mr. Cantwell.
8. The insurance policy for Defendant Travelers acknowledged and reflected the financed policy via the last page, which is an additional page not found in regular policies, notifying the insured, Defendant Smith, that his policy could be cancelled by MPP for non-payment under the contract and power of attorney he had with them.
9. Defendant Smith had his policy cancelled in November of 2006 for failure to pay premium; however, MPP and Defendant Travelers reinstated the policy after MPP received the monthly premium payment.
10. Following a subsequent non-payment of the monthly premium due to MPP in January of 2007, MPP sent Defendant Smith a letter entitled "Ten Day Notice" on January 2, 2007, stating that he had ten days notice prior to the cancellation of the policy to submit the past due premium amount. MPP sent this letter via regular mail to Defendant Smith's correct address of 1557 Brevard Road, Asheville North Carolina. Defendant Smith testified that he received the letter at this address. A copy of the letter was sent to Mr. Caldwell, Defendant Smith's insurance agent, and Mr. Caldwell testified that he received the letter.
11. After no payment was received, MPP sent a letter on January 15, 2007, entitled "Notice of Cancellation," again to the correct address, notifying Defendant Smith of its intention to cancel the insurance policy per the power of attorney. Defendant Smith acknowledged that he received this letter. A copy was also mailed to Mr. Caldwell, Defendant Smith's insurance agent, and another copy was sent to Travelers notifying them of MPP's intent to cancel the policy pursuant to the power of attorney.
12. Defendant Travelers sent a letter notifying Defendant Smith of the cancellation via certified mail to the last known address on file, which was not a current address for Defendant Smith. Defendant Smith testified that he did not notify Travelers of his address change.
13. Travelers conducted an audit on March 5, 2007, to determine if an unearned premium needed to be returned to MPP.
14. Travelers returned unearned premiums to MPP in the amount of $317.00, which, per the finance contract, issued approximately $225.00 in unearned premiums to Defendant Smith. Defendant Smith cashed this check.
15. Defendant Smith did not contact anyone except Mr. Cantwell, his insurance agent, for an explanation of the refund check.
16. Ginger Schmeltzer testified on behalf of Defendant Travelers on the policies in place for dealing with cancellations when a third-party finance company is utilized by an insured for payment of premiums. Ms. Schmeltzer testified that it is company policy that the day after receipt of a Notice of Cancellation from a finance company, the underwriter takes steps to actively cancel the policy and generates a letter to the insured that is sent via certified mail to inform them of the date of cancellation. Thereafter, an audit is performed to determine if any unearned premiums need to be returned to the finance company.
17. Ms Schmeltzer testified that the date of effective cancellation of Defendant Smith's policy was January 25, 2007. She further testified that at no time was there a contract between Defendant Traveler and Defendant Smith regarding the payment of premiums as Defendant Smith had only an obligation to pay money to MPP, not Defendant Travelers.
18. Plaintiff came to work with Defendant Smith on or about April 17, 2007. He did not fill out an application or provide a Social Security number and wanted to be paid in cash only. Plaintiff worked approximately 40 hours per week at a rate of $10.00 per hour. He did not negotiate his rate of pay with Defendant Smith or the owner of the property where the work was being done. At this time, Plaintiff was not operating his own business and did not have any kind of business license. He worked under the direction of Defendant Smith and was subject to discharge by Defendant Smith. He provided his own hand tools but not materials for the job, and Defendant Smith provided large tools. He was not free to engage other assistants on the job.
19. Plaintiff was injured on July 20, 2007, when he fell off a roof and suffered an injury to his left arm. The accident occurred well after the January 25, 2007 cancellation of Defendant Smith's insurance policy, when the policy was no longer in effect.
20. On July 20, 2007, Plaintiff was seen in the Emergency Room at Memorial Mission Hospital, with an injured left upper arm and elbow and posterior shoulder. X-rays of the left humerus showed a midshaft transverse humerus shaft fracture displaced and overlapping. X-rays of the left elbow show a left posterior elbow dislocation with a fleck avulsion fracture of the medial epicondyle of the distal humerus.
21. Plaintiff did not have any other injuries or loss of consciousness. His left elbow was reduced and splinted and Plaintiff was observed overnight in the orthopedic trauma service.
22. On August 1, 2007, Plaintiff underwent open reduction, internal fixation of the humerus, and exploration of the radial nerve.
23. Following surgery, Plaintiff followed up with Dr. Graf for his post-surgical care. Plaintiff was able to return to sedentary duty with no use of his arm on September 17, 2007.
24. Plaintiff returned to work for another company at the same or greater average weekly wage on January 3, 2008. This employment was in excess of 200 miles from Plaintiff's home. However, Plaintiff did not seek any other employment before accepting this job.
25. Plaintiff is capable of the position that he is currently working.
26. Dr. Taub assigned a twenty percent (20%) permanent partial impairment rating to Plaintiff's left arm on April 21, 2008, and lifting restrictions of no more than forty (40) pounds with the left arm.
27. Dr. Taub was of the opinion that Plaintiff was capable of lifting eighty pounds using both arms and, thus, his restriction did not limit his competitiveness for work.
28. Plaintiff returned to see Dr. Graf on July 16, 2008, for his one-year follow-up visit, and Plaintiff's presentation was the same as in December 2007. Dr. Graf noted that Plaintiff's fracture had healed with no visible fracture lines.
29. At his deposition, Dr. Graf testified that Plaintiff reached maximum medical improvement and had restrictions to lift as tolerated as of July 16, 2008. Dr. Graf testified that the rating given by Dr. Taub was "relatively reasonable."
30. The Full Commission finds that Plaintiff reached maximum medical improvement by July 16, 2008, with a twenty percent (20%) impairment to his left upper extremity.
31. Plaintiff's chance of having another elbow dislocation without some sort of severe trauma to his elbow is unlikely. Dr. Taub and Dr. Graf agreed it was unlikely that Plaintiff would need any future surgeries, future follow-up treatment, future medications, or ongoing problems except possible future arthritis, which would be hard to predict.
32. The Full Commission, in its discretion, finds that Defendants did not bring this matter without reasonable ground, and did not engage in stubborn, unfounded litigiousness.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. The parties were subject to and bound by the provisions of the Workers' Compensation Act. N.C. Gen. Stat. § 97-2.
2. Plaintiff was an employee of Defendant Smith on July 20, 2007.Hayes v. Board of Trustees of Elon College, 224 N.C. 11 (1944).
3. Plaintiff sustained a compensable injury by accident arising out of and in the course and scope of his employment with Defendant Smith on July 20, 2007. N.C. Gen. Stat. § 97-2(6).
4. The Full Commission concludes that N.C. Gen. Stat. § 58-35-85 applies to insurance policies financed with power of attorney clauses. Section 58-35-85 requires that the finance company give the insured a ten day notice to effect a cure on the past due payment via regular first class mail to the last known address of the insured. See § 58-35-85(1). MPP sent a letter entitled "Ten Day Notice" on January 2, 2007, via regular mail to the correct address, and Defendant Smith testified that he received the notice. The statute also requires notice to the insurance agent, which was affected. After no payment was received, MPP sent a letter to Defendant Smith on January 15, 2007, entitled "Notice of Cancellation," which was copied to Defendant Travelers and insurance agent Cantwell. Section 58-35-85(3) states that upon receipt of the copy of the request for cancellation notice by the insurer, the insurance contract shall be cancelled with the same force and effect as if the request for cancellation had been submitted by the insured, without requiring the return of the insurance contract or contracts. In the present case, the record shows that Defendant Smith's policy was cancelled as of January 25, 2007. The Full Commission concludes that Defendant Smith's policy was effectively and properly cancelled pursuant to the power of attorney held by MPP and in accordance with N.C. Gen. Stat. § 58-35-85. Plaintiff's accident occurred well after the January 25, 2007 cancellation of Defendant Smith's workers compensation insurance policy, when the policy was no longer in effect. Id.
5. Plaintiff is entitled to have Defendant Smith pay to him temporary total disability compensation benefits from July 20, 2007, through January 2, 2008, at the weekly compensation rate of $266.69. N.C. Gen. Stat. § 97-29.
6. Plaintiff has reached maximum medical improvement and has a twenty percent (20%) permanent disability rating to the left arm. N.C. Gen. Stat. § 97-31(13). Plaintiff is entitled to have Defendant Smith pay to him permanent partial disability benefits for 48 weeks at the weekly compensation rate of $266.69. N.C. Gen. Stat. § 97-31(13).
7. Plaintiff's medical treatment was reasonably required to effect a cure, give relief, or lessen the period of disability and Plaintiff is entitled to have Defendant Smith pay for all medical treatment causally related to his injury by accident. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
8. Plaintiff's current job is deemed suitable. N.C. Gen. Stat. § 97-32.
9. The Full Commission, in its discretion, finds that Defendants did not bring this matter without reasonable ground, and did not engage in stubborn, unfounded litigiousness. Thus, Plaintiff's request for sanctions under N.C. Gen. Stat. § 97-88.1 is denied.
 ***********
Based upon the forgoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant Smith shall pay to Plaintiff temporary total disability compensation benefits at the weekly rate of $266.69 per week from July 20, 2007, through January 2, 2008, subject to the attorney's fee provided herein. This compensation has accrued and shall be paid to Plaintiff in a lump sum.
2. Defendant Smith shall pay to Plaintiff permanent partial disability benefits for 48 weeks at the weekly compensation rate of $266.69, for the twenty percent (20%) disability rating to Plaintiff's left upper extremity, subject to the attorney's fee provided herein. This compensation has accrued and shall be paid to Plaintiff in a lump sum.
3. Defendant Smith shall pay directly to Plaintiff's counsel a reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded to Plaintiff herein. This fee is based on compensation that has accrued, and shall be paid to Plaintiff's counsel in a lump sum.
4. Defendant Smith shall continue to authorize all medically necessary and related medical care for Plaintiff that is causally related to his injury by accident.
5. Defendant Smith shall pay the costs, including expert witness fees of $600.00 to Dr. Graf and $500.00 to Dr. Taub, if not paid by prior Order.
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ DANNY L. McDONALD COMMISSIONER *Page 1