***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Chief Deputy Commissioner Gheen. The appealing party has shown good ground to reconsider the evidence. The Full Commission hereby reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties have been correctly designated, and there is no question as to misjoinder or non-joinder of parties. CGR was insured by Builders Mutual Insurance Company (defendants hereinafter collectively "CGR") on August 27, 2003.
2. CGR provided a Certificate of Insurance to the building owner at or near the time CGR entered into the contract to install a new roof and indicated that CGR employees were covered by workers' compensation insurance.
 ***********
The Deputy Commissioner admitted the following documents into evidence as:
 EXHIBITS
1. Stipulated Exhibit 1: Pre-Trial Agreement.
2. Stipulated Exhibit 2: Medical records.
3. Stipulated Exhibit 3: Discovery requests and Discovery responses.
4. Plaintiff's Exhibit 1: Builder's Mutual Insurance Policy.
5. Plaintiff's Exhibit 2: Series of checks.
6. Plaintiff's Exhibit 3: Earnings records for Valentin Estrada.
7. Plaintiff's Exhibit 4: Earnings records for Valentin Estrada.
8. Plaintiff's Exhibit 5: Photograph of ladder.
9. Plaintiff's Exhibit 6: Photograph of Albaugh roof.
10. Plaintiff's Exhibit 8: Photograph of shingle hoist.
11. Plaintiff's Exhibit 9: Photograph of ladder.
12. Plaintiff's Exhibit 10: Photograph of air compressor.
13. Plaintiff's Exhibit 11: Photograph of shingle hoist.
14. Plaintiff's Exhibit 12: Abstract of checks.
15. Plaintiff's Exhibit 13: Photograph of Albaugh house.
16. Defendant's Exhibit 1: Charles Gregory payroll.
17. Defendant's Exhibit 2: Medical records.
 *********** ISSUE
The parties stipulated at hearing before the Deputy Commissioner that the only issue to be determined is whether or not plaintiff was an employee of the defendant, Charles Gregory Repairs (hereinafter "CGR"), on August 27, 2003, the date of plaintiff's injury by accident.
 *********** EVIDENTIARY RULING
At the hearing before the Deputy Commissioner on June 3, 2004, plaintiff sought to introduce out of court statements by Isidro Aguilar (hereinafter "Aguilar") on matters in controversy through Cindy Willis (hereinafter "Willis"). Willis frequently served as a translator for Aguilar with Charles Gregory (hereinafter "Gregory") because of language barriers.
Aguilar attended the first hearing but did not testify due to time constraints resulting in a continuance of the first hearing. Aguilar unexpectedly moved from the State of North Carolina prior to the second hearing. He is believed to be in the State of Texas but his residence is unknown.
Willis' proffered testimony falls into two distinct categories. First, Willis participated in conversations in which she served as a translator between Gregory and Aguilar. Second, Willis was proffered to testify as to conversations she translated between Aguilar and plaintiff's counsel of record following plaintiff's injury. CGR objects to Willis' testimony in both of these circumstances.
CGR's OBJECTION is OVERRULED as to Willis' testimony recounting conversations in which she participated or served as translator between Gregory and Aguilar. CGR was granted a continuing objection to such testimony that was admitted at the continued hearing.
CGR's OBJECTION to Willis' testimony as to her translations of conversations between Aguilar and plaintiff's counsel is SUSTAINED. The import of the most critical evidence proffered is that Aguilar informed plaintiff's counsel that Gregory advised plaintiff and his associates that the cost of worker's compensation insurance was being withheld during the month of August 2004. The amount was approximately one dollar per square. Additionally, Aguilar told plaintiff's counsel that all tools used were owned by CGR and Gregory continued to supervise their work even when they were being paid by the square.
Assuming that Aguilar is unavailable within the meaning of Rule 804, the preponderance of the evidence must show:
 A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it gives written notice stating his intention to offer the statement and the particulars of it, including the name and address of the declarant, to the adverse party sufficiently in advance of offering the statement to provide the adverse party with a fair opportunity to prepare to meet the statement.
N.C. Gen. Stat. § 8C-1, Rule 804(a)(5).
The test for the admission of the evidence requires a six-part inquiry as follows:
a. Has proper notice been given?
b. Is the hearsay not specifically covered elsewhere?
c. Is the statement trustworthy?
d. Is the statement material?
 e. Is the statement more probative on the issue than any other evidence that the proponent can procure through reasonable efforts?
f. Will the interests of justice be best served by admission?
State v. Smith, 315 N.C. 76, 337 S.E.2d 833 (1985).
In determining the trustworthiness of a statement offered, the inquiry looks to (a) assurances of the declarant's personal knowledge of the underlying event; (b) the declarant's motivation to speak the truth or otherwise; (c) whether the declarant recanted the statements; and (d) the practical availability of the declarant at trial for meaningful cross-examination.State v. Stutts, 105 N.C. App. 577, 414 Se.E.2d 61 (1992).
The probative value of Willis' hearsay testimony regarding conversations between plaintiff's counsel and Aguilar is not more probative than the testimony offered as to the sharing of tools and the degree of supervision that Gregory exercised over plaintiff and his associates that was admitted into evidence. The evidence was largely undisputed on the extent to which plaintiff and his associates used CGR's tools and the degree of supervision Gregory exercised over plaintiff and his associates. Therefore, the proffer of this evidence does not meet the requirements of the fifth test in Smith.
The proffer of evidence of Aguilar's purported statements that CGR was deducting money from the sums earned under their contract with CGR to cover the cost of workers' compensation insurance fails to have sufficient indicia of trustworthiness for admission. Having carefully reviewed the criteria established byStutts, the evidence establishes that Aguilar's statements were made after plaintiff's injury and to plaintiff's counsel. Additionally, the evidence establishes that Aguilar and plaintiff were friends as well as business associates. The two factors profoundly undermine the admission of the proffered testimony without benefit to cross-examination.
 ***********
Based upon the credible evidence of record and reasonable inferences drawn therefrom, the Full Commission finds as fact the following:
 FINDINGS OF FACT
1. Plaintiff was twenty-four years old as of the date of hearing before the Deputy Commissioner and has an elementary school education. Plaintiff entered the United States in 1999. In June 2002, plaintiff began working in the roofing business in North Carolina, where he gained expertise in installing roof shingles.
2. Defendant CGR was established in 1998. CGR performs a range of home construction services on the North Carolina coast, including beach cottage repair, roof repair, new roof construction, home siding installation, and deck installation.
3. In June 2002, plaintiff began working for CGR. It is undisputed that plaintiff was an employee and not a subcontractor from June 2000 through February 2003. Aguilar, a friend of plaintiff's, also worked with CGR as an employee.
4. Plaintiff learned the roofing profession while working as an employee for CGR.
5. Plaintiff left employment with the CGR in February 2003 to take other construction work, apparently installing siding. Plaintiff, who was making ten dollars an hour at CGR, left in order to earn twelve dollars per hour at his new employment. Aguilar had also left CGR during this general time period.
6. Alberto Gonzales (hereinafter "Gonzales") was also initially hired as an employee of CGR.
7. Aguilar returned to CGR in 2003 prior to plaintiff's return in July 2003.
8. Plaintiff and Aguilar, with Gonzales, approached Gregory and proposed that they work for CGR being paid by the square yard of shingles installed and not by the hour. "By the square" is a shorthand expression for "by the square foot," which means that a worker is paid according to the amount of square footage of roofing installed.
9. Plaintiff and his associates negotiated a "square foot price" with CGR and worked on several projects under that arrangement.
10. CGR paid plaintiff and his associates in one check for the work performed. Willis' testimony establishes that plaintiff and his associates were paid every week or at job completion. CGR issued checks to either Aguilar or plaintiff, but the evidence establishes that plaintiff and his associates divided the checks equally regardless of the payee listed on the check.
11. Plaintiff contends, and Gregory denies, that an agreement was reached during their negotiations whereby CGR withheld money from the contract price to cover the cost of workers' compensation insurance coverage.
12. Payroll records of CGR maintained in the ordinary course of business document that plaintiff and his associates were not accounted for as CGR employees after July 2003. For example, State and Federal taxes were not deducted from payments plaintiff and his associates received. Gregory testified, however, that he did not deduct State or Federal taxes from plaintiff's payroll checks even when he was an employee.
13. In August 2003, CGR entered into a verbal agreement with Kendrick Albaugh (hereinafter "Albaugh") to install shingles on the roof of a home in Avon, North Carolina. Albaugh was concerned that CGR have workers' compensation insurance coverage on his workers and had specific discussions with Gregory about workers' compensation insurance coverage. As a requirement for letting the contract to CGR, Gregory informed Albaugh at the time that he carried workers' compensation insurance on his workers. Gregory represented that he had two "crews," and that he would send over one of the "crews" to work on Albaugh's home.
14. Albaugh required CGR to provide a certificate of insurance workers' compensation insurance, which was ultimately provided by CGR's insurance agent.
15. At the time of the initial discussions leading to the contract with Albaugh, Gregory did not know which of the two crews he would use on Albaugh's project. Gregory, in his discussions with Albaugh, never specifically informed Albaugh of the precise employment status of the "crew" members consisting of plaintiff and his associates.
16. Albaugh understood from these conversations that CGR had worker's compensation insurance covering both crews.
17. CGR assigned plaintiff and his associates to roof Albaugh's home. Albaugh had a discussion with Gregory shortly after the work began on his property about safety equipment for the crew. Gregory assured Albaugh that the crew knew what do to and would "do the right thing" in wearing safety equipment.
18. On August 27, 2003, plaintiff was seriously injured when he fell from the roof while working on the Albaugh site.
19. Plaintiff was not using safety equipment at the time of his fall.
20. Plaintiff worked approximately twenty-nine days before his work-related accident. The evidence establishes that plaintiff did not work for any other business or person following his return. Aguilar apparently worked exclusively for CGR, except for shingling one of his landlord's out buildings.
21. In the short time and few projects on which plaintiff worked upon his return in July 2003, Gregory would call plaintiff and his associates the night before a new project and take them there the next day.
22. On the Albaugh project, Gregory showed plaintiff and his associates where to install roof filters and instructed them on the size of those filters. Gregory also demonstrated the correct procedure for installing the roof flashing being used on the Albaugh project, which was not typical to most houses in the area.
23. It is undisputed that CGR provided some of the equipment that plaintiff and his associates were using on the Albaugh project, including air hoses, a shingle hoist, a ladder and nail guns. These were the majority of the tools used on the project. CGR also provided use of an air compressor on the project.
24. Plaintiff and his associates provided some of their own minor tools including some three-way hoses, cable and extension cords.
25. Gregory testified that plaintiff and his associates were, when being paid by the square of shingles being installed, free to subcontract any portion of the work they wished.
26. Plaintiff testified that no assistants were hired because CGR did not pay them sufficiently to hire such assistants.
27. The greater weight of the evidence establishes that plaintiff and his associates neither hired any assistants during the relevant period, nor had the means to do so.
28. Plaintiff admitted that there were no set hours of work and he and his associates were free to work the hours they chose. Gregory's testified that he did not require any particular hours of work from plaintiff and his associates.
29. Willis testified that she and Aguilar spoke with Gregory shortly after the accident and Gregory told them that his workers' compensation carrier would pay for plaintiff's accident. Within a week of plaintiff's return home from the hospital, Willis called Gregory who then informed her that his insurance carrier would not accept the compensability of plaintiff's accident.
30. Immediately after the accident, Aguilar and Gonzalez asked and were returned to CGR as employees, being paid by the hour and covered by CGR's workers' compensation insurance.
 ***********
Based upon the foregoing Findings of Fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. The courts, as noted below, have developed an analysis by which to determine the type of employment relationship that exists at the heart of an employment relationship. In determining whether a party is an employee or an independent contractor for purposes of the Workers' Compensation Act, it is well settled that there are eight factors that indicate classification as an independent contractor: the person employed (a) is engaged in an independent business, calling, or occupation; (b) is to have the independent use of his special skill, knowledge, or training in the execution of the work; (c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing the work rather than another; (e) is not in the regular employ of the other contracting party; (f) is free to use such assistants as he may think proper; (g) has full control over such assistants; and (h) selects his own time. McCown v. Hines,140 N.C. App. 440, 537 S.E.2d 242 (2000), citing Hayesv. Elon College, 224 N.C. 11, 16, 29 S.E.2d 137, 140
(1944). However, no one factor is determinative. Id.
2. The Full Commission finds the Court's above declaration that "no one factor is determinative" to be directive and of important note. In the present case, defendant contends that plaintiff is an independent contractor, and not subject to the Workers' Compensation Act, because: plaintiff worked for a fixed price ("by the square") as opposed to an hourly wage; he had control over the manner in which he could work; he used some of his own tools; he was free to work for other contractors or employers, and could employ an assistant; he was free to use his own expertise and skill in the execution of his work; and, he did not receive company benefits. While all of these factors are important in considering plaintiff's employment status, they are not determinative and do not collectively create a presumption that plaintiff was an independent contractor.
3. The evidence of record shows that there is contrary evidence as to the understanding of the parties regarding plaintiff's status as an employee or an independent contractor. Further, the record is clear that plaintiff worked nearly full time for CGR, and neither had a business as an independent contractor or worked by virtue of such status with any other employer or contractor. Although plaintiff provided some of his own minor tools, CGR provided him with certain pieces of equipment that otherwise would have prevented plaintiff from performing the job absent their use. And although it is clear plaintiff had a certain degree of skill and expertise, the record shows that he was given particular instruction as to how to perform his job.
4. As further evidence of plaintiff's employment status with Freedom Air, defendant argued that plaintiff could have employed an assistant; however, there is no evidence that plaintiff had the means to do so given his rate of pay, or that employing an assistant was common among the other alleged independent contractors who worked at CGR. Lastly, all of plaintiff's associates who were alleged by CGR to be independent contractors were former hourly employees of CGR and returned to an hourly employee status following plaintiff's accident.
5. Based on the totality of the evidence of record, defendant CGR was the employer of plaintiff at the time of his injury by accident on August 27, 2003. N.C. Gen. Stat. § 97-2(3); McCown v. Hines, 140 N.C. App. 440,537 S.E.2d 242 (2000); and Hayes v. Elon College,224 N.C. 11, 16, 29 S.E.2d 137, 140 (1944).
6. Based on the totality of the evidence of record, plaintiff was an employee of defendant CGR on August 27, 2003, at the time of his injury by accident. N.C. Gen. Stat. § 97-2(2); McCown v. Hines, 140 N.C. App. 440,537 S.E.2d 242 (2000); and Hayes v. Elon College,224 N.C. 11, 16, 29 S.E.2d 137, 140 (1944).
7. The Industrial Commission has jurisdiction over the parties and the subject matter of this action. N.C. Gen. Stat. § 97-3.
8. On August 27, 2003, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant CGR. N.C. Gen. Stat. § 97-2(6).
9. As a direct and proximate result of his compensable injury, plaintiff is entitled to have defendant CGR provide him with indemnity benefits to be determined pursuant to the Workers' Compensation Act and the Order provided herein. N.C. Gen. Stat. §§ 97-1, et seq.
10. Plaintiff is entitled to have defendant CGR provide all medical treatment arising from this injury by accident to the extent it tends to effect a cure, give relief or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
 ***********
Based on the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 ORDER
1. This matter is hereby remanded to Chief Deputy Commissioner Stephen T. Gheen for assignment to a Deputy Commissioner for the taking of additional evidence or further hearing, if necessary, and the entry of an Opinion and Award with findings on the issues of (1) the extent of plaintiff's disability; (2) the amount of indemnity benefits due plaintiff; and (3) the extent of medical compensation due plaintiff.
2. Defendants shall pay costs.
This 23rd day of March 2005.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN