* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Donovan with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. Defendant-employer, at the time of the alleged injury by accident, was subject to the provisions of the North Carolina Workers' Compensation Act. *Page 2 
2. Defendant-carrier on the risk was Attenta, Inc. (formerly CompCarolina).
3. The parties stipulated to the following documentary evidence:
 a. Stipulated Exhibit #1: plaintiff's medical records and W-2 Form
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 36 years old. Plaintiff worked full time for Blackwater USA, a government contractor security company located in Moyock, North Carolina. Defendant-employer is a bar and restaurant. The bar was open until approximately 2:00 a.m., and the restaurant stayed open for some hours after that.
2. Plaintiff had been a regular customer of defendant-employer for some time prior to being offered a job providing security services on Friday and Saturday nights. Plaintiff was paid $50.00 per night for working until the bar closed, then an additional $30.00 per night to work in the restaurant until it closed. Plaintiff's duties included providing security, checking the identification of patrons, and performing additional duties requested by the manager or bartender, namely, clean-up duties, stocking beer, and assisting with heavy lifting. Plaintiff was required to report for work from 8:00 p.m. or 9:00 p.m. until 3:00 a.m. to 5:00 a.m., depending on when the restaurant closed. Plaintiff took direction from the manager and bartender, performing work as instructed by them.
3. On May 28, 2005, plaintiff was working in the bar area just before it closed at approximately 2:00 a.m. A patron, William Morrison, was sitting at the end of the bar in the *Page 3 
restaurant. Mr. Morrison had arrived at the bar at approximately 7:30 p.m. and had consumed at least six or seven 16 oz. beers between 7:30 p.m. and when the bar closed at 2:00 a.m.
4. Mr. Morrison and plaintiff were long-time friends and the two engaged in some teasing and banter while plaintiff assisted the bartender in closing. At approximately 2:00 a.m., Ms. Linda Coy, the manager for defendant-employer, entered the bar and observed plaintiff and Mr. Morrison fooling around. She told Mr. Morrison to leave the bar and told plaintiff to get back to work, remonstrating plaintiff for horsing around with a patron in the bar. Mr. Morrison went into the restaurant and plaintiff continued his duties in the bar area. Plaintiff stayed in the bar area assisting the bartender, Kim Newburn, for approximately 30 more minutes.
5. When plaintiff went to the restaurant to continue his duties for defendant-employer, he observed Mr. Morrison falling asleep at one of the tables, which was unacceptable in the restaurant. In an attempt to encourage Mr. Morrison to leave, plaintiff took Mr. Morrison's hat from his head and placed it on a sign outside the front door of the restaurant. Mr. Morrison assured plaintiff that he was all right and was waiting for food, so plaintiff retrieved the hat and returned it to Mr. Morrison.
6. Some time later, while plaintiff was performing his job duties, he passed Mr. Morrison's table and Mr. Morrison rose suddenly and knocked off plaintiff's hat and sunglasses. As plaintiff bent over to retrieve his hat, Mr. Morrison made a sudden move towards him. Plaintiff stuck out his arm to fend off Mr. Morrison and Mr. Morrison lost his balance. As he fell backwards, Mr. Morrison grabbed plaintiff's arm and pulled him along. The two men hit a 5' X 5' plate glass window, which shattered on impact.
7. The only testimony in contradiction to plaintiff's version of the incident was provided by Mr. Morrison. Given Mr. Morrison's admittedly inebriated state and his inability to *Page 4 
remember many, if not most of the occurrences of the night in question, the undersigned find his testimony significantly less credible than that of plaintiff and it is given little weight.
8. Plaintiff sustained a cut to his right forearm. He was taken by ambulance to Albemarle Hospital Emergency room and underwent surgery by Dr. Karl Hubbard. Dr. Hubbard testified that the purpose of the surgery was to clean the wound, look for any obvious damage to nerves, muscles, or tendons, and to close the wound. He also removed some portions of lacerated muscle. Dr. Hubbard released plaintiff to return to work on June 23, 2005. He has not given plaintiff a permanent partial disability rating, noting that at worst, plaintiff may have suffered some slight muscle weakness.
9. Plaintiff worked for approximately one month with defendant-employer prior to his injury. Plaintiff did not work all hours and days for which he was hired for unknown reasons. No evidence was presented of the average weekly wage of an employee of the same grade and character as plaintiff and in the same locality or community earned in the 52 weeks preceding plaintiff's accident.
10. The evidence shows that plaintiff was hired to work for wages that would total $160.00 per week. But for the injury sustained by plaintiff, he would have been able to earn that amount in the position offered by defendant-employer. For this reason, the undersigned find that plaintiff's average weekly wage was $160.00, yielding a compensation rate of $106.67 per week.
11. Based upon the greater weight of the evidence, the Full Commission finds plaintiff was not an independent contractor in that he was not engaged in an independent business, calling, or occupation, he was subject to discharge, he was in the regular employ of defendant-employer, he took direction from defendant-employer, and defendant-employer had the right to control and manage plaintiff's work, including when plaintiff reported to work and *Page 5 
what duties plaintiff performed. Thus, the Full Commission finds that plaintiff was an employee of defendant-employer at the time of the incident.
12. Based upon the greater weight of the evidence, the Full Commission finds that while plaintiff and Mr. Morrison engaged in horseplay and banter earlier in the evening, at the time the incident occurred that resulted in injury to plaintiff, plaintiff was performing his job duties in the course of his employment. As such, plaintiff suffered an injury by accident arising out of and in the course of his employment with defendant-employer on May 28, 2005.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. To establish a claim for workers' compensation, a plaintiff has the burden of proving that he was an employee of defendant rather than an independent contractor. In Hayes v. Board of Trustees of Elon College etal, 224 N.C. 11, 29 S.E.2d 137 (1944), the Supreme Court set out several attributes to consider in determining whether a person is an independent contractor rather than an employee. These include:
 (a) whether the person is engaged in an independent business, calling, or occupation; (b) is to have the independent use of his special skill, knowledge, or training in the execution of the work; (c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing the work rather than another; (e) is not in the regular employ of the other contracting party; (f) is free to use such assistants as he may think proper; (g) has full control over such assistant; and (h) selects his own time. Id. *Page 6 
The Supreme Court further held that the presence of all the factors is not necessary but should be considered along with all other circumstances. Id. Considering these factors along with the particular circumstances in the case at hand, plaintiff was not an independent contractor.
2. Although plaintiff's actions prior to beginning his duties in the restaurant may be considered horseplay, it is clear that once plaintiff began working in the restaurant, his actions towards Mr. Morrison revolved around the discharging of his duties and did not constitute horseplay. Michaux v. Gate City Orange Crush Bottling Co., 205 N.C. 786,172 S.E. 406 (1934). As such, plaintiff's injuries were sustained as a result of an injury by accident arising out of and in the course of the employment on May 28, 2005. N.C. Gen. Stat. § 97-2(6).
3. Because plaintiff only worked for approximately one month prior to his injury, his average weekly wage cannot be calculated by use of the first or second methods provided in N.C. Gen. Stat. § 97-2(5). Further, to divide the money earned by plaintiff during the time he worked for defendant-employer by the number of weeks of employment would not provide a fair and just result to plaintiff as, for reasons not disclosed in the record, he had not worked all the hours or days for which he was hired; therefore, the third method provided in N.C. Gen. Stat. § 97-2(5) may not be utilized. No evidence has been presented of the average weekly wage of an employee of the same grade and character as plaintiff and in the same locality or community earned in the 52 weeks preceding plaintiff's injury by accident; therefore, it is impossible to calculate plaintiff's average weekly wage according to the fourth method provided in N.C. Gen. Stat. § 97-2(5). As such, plaintiff's average weekly wage is determined to be $160.00, as the evidence shows that this is the amount plaintiff would earn each week while working for defendant-employer. As a result of the compensable injury, plaintiff is entitled to temporary *Page 7 
total disability compensation at the rate of $106.67 per week for the period from May 28, 2005 through June 23, 2005. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to have defendant pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability, subject to the statute of limitations prescribed in N.C. Gen. Stat. § 97-25.1. N.C. Gen. Stat. § 97-2(19).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enter the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendants shall pay temporary total disability compensation to plaintiff at the rate of $106.67 per week for the period from May 28, 2005 through June 23, 2005. As said compensation has accrued, it shall be paid in a lump sum.
2. A reasonable attorney's fee of 25% of the compensation awarded to plaintiff in Paragraph 1 above is hereby approved to be deducted from sums due plaintiff and paid directly to plaintiff's counsel.
3. Defendants shall pay medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
4. Defendants shall pay the costs.
 This the 17th day of September 2007. *Page 8 
 S/______________________
 DIANNE C. SELLERS
 COMMISSIONER
CONCURRING:
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/______________________ PAMELA T. YOUNG COMMISSIONER