***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Deluca and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Deluca with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. On November 28, 2006, the defendant, Fred Luther d/b/a Consolidated Framing, had workers' compensation insurance in the state of North Carolina with the Hartford Underwriters Insurance Company, which was the carrier on the risk.
2. On November 28, 2006, plaintiff contends and defendants deny that plaintiff was employed by the defendant-employer in that an employee-employer relationship existed between defendant-employer and plaintiff.
3. At all times relevant to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. In addition to denying that plaintiff was an employee, defendants also deny that plaintiff experienced a work-related injury on November 28, 2006, involving his left index finger and left hand.
5. The parties were unable to agree as to plaintiff's average weekly wage, which they stipulated shall be determined by the undersigned following the hearing before the Deputy Commissioner, should there be a determination of compensability in this matter.
6. The following documents were stipulated into the record:
 a. Pretrial Agreement as Stipulated Exhibit 1.
 b. Medical records as Stipulated Exhibit 2.
 c. Industrial Commission forms as Stipulated Exhibit 3.
 d. Plaintiff's discovery responses as Stipulated Exhibit 4.
7. Plaintiff's Exhibit 1, telephone records, was admitted into evidence.
 *********** *Page 3 
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was thirty-five (35) years of age, having a birth date of January 1, 1973. Plaintiff graduated from high school. Most of his work history was in the field of construction with about 5 years of that work in self-employment.
2. In November, 2006, plaintiff was unemployed. Plaintiff found an ad in the publication IWANNA which was placed by defendant-employer and which noted that full-time work was available for carpenters, carpenters' helpers, and siding carpenters and that salary would be dependant upon experience. The telephone number of Fred Luther was listed in the advertisement.
3. Plaintiff called the phone number in the IWANNA ad and talked with Mr. Luther about the position that was advertised. After discussing the work available with defendant, plaintiff was hired to work at a job site in Maggie Valley in Haywood County.
4. Plaintiff was hired to work at an hourly rate of $15.00 per hour. Plaintiff was told that forty hours per week was available and more if he wanted to work more than forty hours per week. Standard work hours were 8 a.m. to 5 or 5:30 p.m. There was some opportunity for weekend work as well.
5. Plaintiff reported to work during the week of November 20, 2006. Plaintiff drove to Mr. Luther's home in Western Buncombe County and then plaintiff and other workers drove to the job site in Haywood County. *Page 4 
6. Defendant had been hired to install siding at a condominium project in Maggie Valley in Haywood County. Plaintiff and others were hired to install this siding. The siding and other materials needed for the job were available at the job site in Haywood County.
7. In addition to all siding materials being available, tools were also available at the job site in Haywood County. Plaintiff used some of his own tools and loaned some tools to other workers. However, this was a choice which plaintiff made and was not a requirement as defendant-employer provided tools for plaintiff's use.
8. Plaintiff was assigned specific buildings on which to work and told what to do at those buildings. Plaintiff's work was supervised by defendant to determine whether the work being done by plaintiff met specifications. Plaintiff was not free to hire assistants to help him perform his assignments on this job.
9. Plaintiff was working with a co-worker. On or about November 27, 2006, the co-worker shot a nail from the nail-gun, hitting plaintiff in the left index finger.
10. Chad Clement, partner to Mr. Luther, testified he was on the job site every day and according to his memory and records, plaintiff first worked on November 22, 2006 for eight and a half hours. The next day was Thanksgiving and plaintiff did not work that day. Plaintiff then worked next on Friday, November 24, 2006 for eight and a half hours. Plaintiff put in four and a half hours on November 27, 2006. Plaintiff worked a total of about 22 hours on three days between November 22, 2006 and November 27, 2006, and earned about $330.00, which was paid in cash.
11. The pain in plaintiff's left index finger woke him in the early morning of November 30, 2006. Because of the severity of the pain he was experiencing, plaintiff woke his wife, Shannon Brewer, and asked her to drive him to the emergency room in Asheville. *Page 5 
12. Plaintiff was seen at the emergency room on the early morning of November 30, 2006. Plaintiff gave a history to the emergency room physician of having been shot in the left index finger with a nail gun at work by a co-worker approximately two days earlier. Plaintiff told the emergency room physician that he had experienced pain, swelling and decreased range of motion, which had increased rapidly over the two days between the admission and accidental injury, finally resulting in pain to the point that plaintiff was experiencing nausea and vomiting.
13. An upper extremity expert, Dr. Stephen Westly, was called to examine plaintiff on November 30, 2006, in the emergency room. After examining plaintiff, Dr. Westly formed a diagnosis of subacute septic flexor tenosynovitis of the left index finger secondary to puncture wounds, after which plaintiff underwent emergency surgery.
14. After plaintiff was told that he was going to be admitted to the hospital, plaintiff asked his wife to call Mr. Luther and tell him that plaintiff would be missing work as a result of this injury. Plaintiff also asked his wife to let Mr. Luther know that plaintiff could not pick up a co-worker at an Asheville shelter.
15. Ms. Brewer called and told Mr. Luther that the nail-gun injury which plaintiff had experienced had gotten much worse and that plaintiff was being admitted to the hospital for surgery.
16. Plaintiff was discharged from the hospital on December 2, 2006, after having been given wound care instructions. Plaintiff's left hand and arm were immobilized in a cast-type bandage.
17. On December 7, 2006, plaintiff returned to Dr. Westly and his sutures were removed. Plaintiff was sent to therapy for provision of a light support splint for the index and long fingers, as well as exercise instruction. Plaintiff underwent an initial evaluation with *Page 6 
Combined Therapy Specialties of Asheville on December 7, 2006. Thereafter, plaintiff did not follow up with Dr. Westly nor did he undergo the recommended physical therapy. Plaintiff did not have insurance or a way to pay for a return visit to Dr. Westly or a visit to the Wound Care Center or ongoing therapy. While plaintiff did not attend formal therapy, plaintiff tried to do the exercises shown to him by the therapist.
18. After plaintiff was released from the hospital he returned to the job site to collect his tools. Plaintiff was told by the defendant that he could come to work after he was able to work at full duty.
19. Plaintiff was unable to use his injured hand for several weeks, and then it took several months to regain strength in that hand.
20. Plaintiff filed a Form 18 on December 21, 2006, less than thirty days following the accident.
21. Dr. Westly testified that the sort of problem which plaintiff experienced to his left finger and hand is most typically caused by a puncture wound which directly enters the protective environment of the flexor tendon tunnel through a very small puncture, and that plaintiff's presentation was quite typical of this sort of injury.
23. Dr. Westly testified that plaintiff's open wound should have healed to the point of being closed within one and a half weeks to two weeks, although it would not be unusual for some small areas to be partially open after this amount of time.
24. Dr. Westly testified that he expected plaintiff to be out of work from the time he was in the hospital until plaintiff returned to see him on December 7, 2006. Dr. Westly further testified that he expected that plaintiff might have been able to return to reduced work status within approximately three to four weeks from surgery, if plaintiff had been doing spectacularly *Page 7 
well. At that point Dr. Westly would have permitted light duty work with little or no use of the left injured hand and full protection of the injured finger.
25. Dr. Westly testified that he would have expected plaintiff to undergo four to twelve weeks of physical therapy and that he would have expected to release plaintiff from care twelve to sixteen weeks after surgery. Dr. Westly also testified that he would have expected plaintiff to perhaps have been at maximum medical improvement within approximately six months from the date of injury.
26. Neither Dr. Westly nor any other physician has examined plaintiff since December 7, 2006 and provided an opinion regarding plaintiff's ability to return to work and what restrictions, if any, plaintiff would have.
27. Plaintiff began to look for work a few months after this injury and plaintiff was able to return to work for another employer on May 1, 2007, making more money than he was making while working for defendant.
28. Mr. Luther testified that while all of his employees are independent contractors, he had a certificate of insurance in place with the general contractor for the job in Maggie Valley. There is workers' compensation coverage for plaintiff's injury. While some of defendant's workers have their own workers' compensation coverage, deductions are made from pay for those who do not. If the workers cannot provide a certificate of insurance, then 14% — 17% is deducted from their pay, to pay for the workers' compensation insurance, which was in place for this job.
29. The undersigned have considered the methods for calculating average weekly wages set forth in N.C. Gen. Stat. § 97-2(5) and finds that there are exceptional reasons that make the first four methods of calculating plaintiff's average weekly wage unfair to either the *Page 8 
employer or the employee. Due to the short period of time plaintiff worked, computation of his average weekly wage is done based upon actual hours worked over the period of time he had the ability to participate in work. Evidence shows that employees could work weekends and there were employees working Thanksgiving Day. As such, plaintiff earned a total of $330.00 and there were six days available for plaintiff to work, making his average daily wage $55.00 and his average weekly wage $385.00.
30. Based upon the competent and credible evidence of record, plaintiff was unable to return to his regular work in the construction field from the date plaintiff underwent surgery, November 30, 2006, until plaintiff returned to work for an employer other than the defendant on May 1, 2007. Plaintiff was unable to earn wages in the same or any other employment during this time and was temporarily and totally disabled from November 30, 2006, to May 1, 2007.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On or about November 27, 2006, the date of this accidental injury, plaintiff was employed by defendant-employer. N.C. Gen. Stat. § 97-2(2);Hayes v. Elon College. 224 N.C. 11, 29 S.E.2d 137 (1944).
2. Plaintiff sustained an injury by accident to his left index finger and left hand on or about November 27, 2006, in the course and scope of his employment with the defendant-employer. N.C. Gen. Stat. § 97-2(6).
3. N.C. Gen. Stat. § 97-22 provides that an injured employee shall give the employer written notice of the accident. Compensation to an injured employee is not payable unless the *Page 9 
employee provides the written notice within 30 days after the occurrence of the accident, unless reasonable excuse is made to the satisfaction of the Industrial Commission for not giving such notice and the Commission is satisfied the employer has not been prejudiced thereby. N.C. Gen. Stat. § 97-22. An employer is not prejudiced by a plaintiff's failure to provide written notice of an injury within 30 days when defendant had actual notice of plaintiff's injury. Sanders v. Broyhill furnitureIndustries, 131 N.C. App. 383, 507 S.E.2d 568 (1998). In the case at hand, plaintiff filed a Form 18, Notice of Accident to Employer on December 21, 2006, which is less than 30 days after the occurrence of the accident. Furthermore, plaintiff provided actual notice to defendant-employer on November 30, 2006 when plaintiff's wife contacted Mr. Luther and notified Mr. Luther of the accident. Thus, plaintiff provided timely notice of the accident pursuant to N.C. Gen. Stat. § 97-22.
4. Plaintiff was totally disabled from his compensable injury by accident from November 30, 2006 until May 1, 2007. Russell v. LowesProduct Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
5. Defendants are required to provide plaintiff with reasonably necessary medical treatment related to his compensable injury by accident that tends to effect a cure, provide relief, or lessen the period of disability. This shall include the treatment rendered by Dr. Stephen Westly. N.C. Gen. Stat. §§ 97-2(19), 97-25, and 97-25.1.
6. In this case, the application of the fifth method of calculation under N.C. Gen. Stat. § 97-2(5) is appropriate. Plaintiff's average weekly wage prior to injury was $385.00 and his compensation rate is $256.68.
 *********** *Page 10 
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff temporary total disability compensation at the rate of $256.68 per week from November 30, 2006, until May 1, 2007. Any amounts accrued shall be paid in a lump sum subject to the attorney's fee ordered below.
2. Defendants shall pay all medical expenses incurred or to be incurred resulting from plaintiff's compensable injury by accident so long as it tends to effect a cure, provide relief, or lessen the period of disability. This shall include the treatment rendered by Dr. Stephen Westly.
3. A reasonable attorney fee of twenty-five percent (25%) of the compensation due under Paragraph 1 of this Award is approved for plaintiff's attorney. Of the lump sum that has accrued, defendants shall pay twenty-five percent (25%) directly to plaintiff's attorney.
4. Defendants shall bear the costs.
This the 27th day of January 2009.
 S/___________________
 DIANNE C. SELLERS
 COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 11 
 S/___________________ DANNY LEE McDONALD COMMISSIONER