* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission affirms with modifications the Opinion and Award of Deputy Commissioner Phillips.
 * * * * * * * * * * *
The following documentary evidence was received before the Deputy Commissioner as:
 EXHIBITS *Page 2 1. Stip. Ex. #1: Medical Records.
 2. Stip. Ex. #2: IC Forms.
 3. Stip. Ex. #3: Discovery Responses, Correspondence, Motions and Orders.
 4. Stip. Ex. #4: Plaintiff's Recorded Statement, Cancelled Check, Check dated 2/6/09, Death Certificate of Plaintiff.
 5. Stip. Ex. #5: NCIC Database Coverage Screen.
 6. Plaintiff's Ex. #1: Check #2603 ($630.00), Check #3600($700.00).
 7. State's Ex. #1: Letter addressed to Mr. James Harris regarding his status to Appalachian Underwriters.
 * * * * * * * * * * * ISSUES
1. Whether an employment relationship existed between James Locklear and Defendant Harlis Dial under the North Carolina Workers' Compensation Act?
2. Whether James Locklear was injured in the course and scope of employment, and if so, to what benefits is his widow entitled?
3. Whether Travelers Indemnity Company properly canceled its workers' compensation insurance policy with Defendant-Employer?
4. Whether any penalties should be assessed for Defendant-Employer's alleged failure to provide workers' compensation insurance as required by the Act?
5. What is the correct average weekly wage?
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 3 
 STIPULATIONS
1. The carrier allegedly liable on the risk is correctly named above; and the named employer may be found to be self-insured.
 * * * * * * * * * * *
Based upon all the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of hearing before the Deputy Commissioner, James Locklear (hereinafter referred to as "Plaintiff") was 57 years old. Plaintiff was married to Kathleen Locklear (hereinafter referred to as "Plaintiff's widow") and resided in Lumberton, North Carolina. Plaintiff was employed with Defendant-Employer, Harlis Dial d/b/a Dial's Drywall, working 40 hours per week as a hanger and framer. Defendant-Employer paid Plaintiff in cash at the rate of $13.00 per hour, or $520.00 per week.
2. Defendant-Employer's employees, including Plaintiff, met at his home at 5:00 a.m. every day to ride together in the company van to the job site. Defendant-Employer had twelve employees working on a medical building in Myrtle Beach, South Carolina at the time of Plaintiff's accident.
3. Defendant-Employer provided his employees with chop saws, lathes, scaffolding and other expensive and large tools necessary to complete the jobs. He instructed the employees as to which portions of the buildings to work on and supervised the details of their work.
4. On January 26, 2009, the employer-employee relationship existed between Plaintiff and Defendant-Employer. *Page 4 
5. On January 26, 2009, Plaintiff sustained an injury by accident arising out of and in the course of his employment with Defendant-Employer when he fell from a scaffold and fractured his right heel.
6. Following the accident, Plaintiff was taken by ambulance to Grand Strand Medical Center, where he was diagnosed with a fracture to his right heel. Plaintiff was admitted for treatment and subsequently discharged on January 28, 2009 after being referred to an orthopedist.
7. Plaintiff followed up at Fayetteville Orthopaedics, where he was seen by Dr. James R. Santangelo, who recommended that he undergo an open reduction internal fixation to repair the heel.
8. Despite surgery, Plaintiff was unable to return to work due to continued complaints of pain. When Dr. Santangelo saw Plaintiff on March 9, 2009, he recommended that he undergo a fusion.
9. Plaintiff was also evaluated by Southeastern Urgent Care Pembroke on April 27, 2009, May 25, 2009, and June 3, 2009, for complaints of right heel and left hip pain.
10. On July 15, 2009, Dr. Santangelo referred Plaintiff to the University of North Carolina Hospital.
11. On October 7, 2009, Plaintiff was seen by Dr. Shepard Hurwitz, a board certified Orthopedist, who agreed that he would benefit from further surgery. Dr. Hurwitz was of the opinion, and the Full Commission so finds, that the fall Plaintiff sustained on January 26, 2009 caused the injuries to his right foot and ankle. *Page 5 
12. On February 2, 2010, Plaintiff underwent further surgery for his foot. Dr. Hurwitz was of the opinion that Plaintiff would be out of work for four and a half to six months following the surgery, and that he would likely have permanent work restrictions.
13. Defendant-Employer has operated his business out of his home in Rowland, North Carolina for the past 15 to 18 years. He has purchased insurance through Mr. James Harris for the past several years and has always sent premium payments to Mr. Harris. Through the services of Appalachian Underwriters, Mr. Harris obtained a workers' compensation insurance policy for Defendant-Employer with Travelers. Coverage under the policy began on August 21, 2008 and was to remain in effect for one year.
14. The total premium for the aforementioned policy was $7,941.00. Per the terms of Defendant-Employer's payment plan with Travelers, 25% of the total premium owed was due as a down payment. The remainder would be paid in nine equal, monthly installments of $667.78. Defendant-Employer was supposed to remit payment each month by mail directly to Travelers. However, in accordance with his prior practice, Defendant-Employer continued to make payment directly to Mr. Harris. Defendant-Employer paid part of the premium up front and then made monthly payments of $600.00 to $700.00 per month to Mr. Harris. Defendant-Employer always made the payment within four to five days of the due date and was never a month behind. However, after sending Travelers the down payment Defendant-Employer made in September 2008, Mr. Harris did not send Defendant-Employer's monthly premium payments to Travelers.
15. The address Travelers had for Defendant-Employer was 3795 Highway 710S, Rowland, NC, 28383, which was the address listed on his insurance application. Defendant-Employer's correct address was actually 3295 Highway 710S in Rowland.
16. On December 1, 2008, Travelers sent a Notice of Cancellation to Defendant-Employer *Page 6 
via certified mail because it had not received the monthly premium payments. However, the address on the cancellation notice was incorrect. Therefore, Defendant-Employer never received the Notice of Cancellation and it was returned to Travelers as undeliverable. Defendant-Employer did not know as of January 26, 2009 that his workers' compensation insurance had been canceled.
17. Defendant-Employer reported Plaintiff's injury to Mr. Harris, who in turn indicated that he would report the injury to Travelers.
18. When Mr. Harris called Travelers to file Plaintiff's claim, he learned the policy had been cancelled for non-payment. Mr. Harris told Travelers that Defendant-Employer had made payments to him but he had not mailed the payments to them.
19. Mr. Harris testified that a Plaintiff of Travelers told him to send in the payment, and that while he would receive no commission because of the situation, the policy would be reinstated and Plaintiff's claim would be paid.
20. Mr. Harris mailed a payment of $2,647.17 to Travelers on February 6, 2009. When Travelers received the check, a claim number was assigned. Mr. Harris gave the claim number to Defendant-Employer, who then gave the claim number to Plaintiff. Approximately two weeks later, Mr. Harris learned that Plaintiff's claim had been denied as Travelers had decided not to reinstate the policy.
21. Carol Umansky, Regional Controller for Travelers, and Kathleen Gardner, former Direct Billing Supervisor for Travelers, testified that Mr. Harris had no authority to accept payment on behalf of Travelers, as he was in no way associated with Travelers. Only Travelers or Appalachian had the authority to accept premium payments, and neither had received any payment prior to cancellation of Mr. Dial's policy, except for the initial down payment that was *Page 7 
made in September 2008. However, Ms. Umansky later clarified her testimony and stated that Travelers would not have a problem with a premium payment coming from some other source.
22. Mrs. Gardner testified that Travelers mailed the Notice of Cancellation via certified mail to Defendant-Employer's address as indicated on his application for insurance that was kept in Travelers' database in their underwriting file. Mrs. Gardner testified that the notes regarding the cancellation notice indicate that Traveler's personnel contacted Mr. Harris or someone at his agency, after the cancellation notice was returned undeliverable. It was confirmed that Harris did not have a new address for Defendant-Employer, so the cancellation documents, including the unsigned green card, were forwarded to record retention.
23. There is no evidence that Defendant-Employer received but refused to sign for the Notice of Cancellation.
24. Plaintiff never returned to work after January 26, 2009. He was approved for Social Security Disability in November 2009.
25. On March 26, 2010, Plaintiff died due to causes unrelated to the January 26, 2009 injury.
26. Dr. Hurwitz opined that Plaintiff likely would have been released at maximum medical improvement one year post-operatively, and that he would likely have been assigned between a 15-20% disability rating per the AMA guidelines.
27. As a result of the injury Plaintiff sustained on January 26, 2009, he was unable to earn any wages in any employment from the date of injury to the date of his death on March 26, 2010.
28. As a result of the January 26, 2009 injury by accident, Plaintiff retained a 20% permanent partial impairment to his right foot on the date of his death. *Page 8 
 * * * * * * * * * * *
The foregoing Stipulations and Findings of Fact engender the following additional:
 CONCLUSIONS OF LAW
1. All parties are properly before the Industrial Commission. All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act. The Industrial Commission has jurisdiction over the parties and the subject matter of this case. N.C. Gen. Stat. § 97-2.
2. On January 26, 2009, Plaintiff sustained a compensable injury by accident to his right ankle. N.C. Gen. Stat. § 97-2(6).
3. Defendant-Employer Harlis Dial d/b/a Dial's Drywall was the duly-qualified Employer at the time of the accident and is subject to the North Carolina Workers' Compensation Act, having employed the requisite number of employees to be bound under the provisions of said Act at the time of the incident. N.C. Gen. Stat. § 97-2.
4. An employee-employer relationship existed between Plaintiff and Defendant-Employer on January 26, 2009. N.C. Gen. Stat. § 97-2;Hayes v. Board of Trustees, 224 N.C. 11, 29 S.E.2d 137 (1944).
5. Disability under the Workers' Compensation Act refers to a diminished capacity to earn money and not a physical infirmity.Peoples v. Cone Mills Crop.,316 N.C. 426, 342, S.E. 2d 798 (1986). To obtain an award of compensation under the Act, the employee must establish that he is incapable of earning the same wages he earned before his injury in the same employment, or any other employment, and that the employee's incapacity to earn wages was caused by his injury.Arrington v. Texfi Industries,123 N.C. App. 476, 473 S.E. 2d 277 (1966). *Page 9 
The medical evidence supports the conclusion by a preponderance of the evidence that Plaintiff was totally disabled from January 26, 2009 through March 26, 2010. N.C. Gen. Stat. § 97-29.
6. Pursuant to N.C. Gen. Stat. § 58-36-105(b), Defendant-Carrier was required to give "notice of its intent to cancel the workers' compensation policy by written notice to be given by registered or certified mail, return receipt requested. ". . .No cancellation by the insurer shall be effective unless and until such method is employed and completed." (Emphasis added.)
7. Travelers Indemnity Company did not properly cancel Defendant-Employer's workers' compensation policy pursuant to N. C. Gen. Stat. § 58-36-105(b), in that it failed to properly address the notice of cancellation, thereby resulting in an undeliverable notice. Defendant-Carrier's attempted cancellation was therefore not "completed" as required by N.C. Gen. Stat. § 58-36-105.
8. Because Defendant-Carrier did not meet the statutory requirements to effectively and properly cancel a valid workers' compensation policy, it is liable for Plaintiff's compensable injuries. N.C. Gen. Stat. § 58-36-105(b).
9. Plaintiff's average weekly wage was $520.00, which generates a compensation rate of $346.68 per week. N.C. Gen. Stat. § 97-2(5).
10. As a result of the compensable injury by accident, Defendant-Carrier shall pay to Plaintiff's widow temporary total disability benefits at the rate of $346.68 per week from January 26, 2009 through March 26, 2010. N.C. Gen. Stat. §§ 97-29; 97-37.
11. As a result of the compensable injury by accident, Defendant-Carrier shall pay to Plaintiff's widow compensation for a 20% permanent partial disability rating for Plaintiff's right foot. N.C. Gen. Stat. § 97-31(14). *Page 10 
12. As a result of the compensable injury by accident, Defendant-Carrier shall pay all related medical expenses incurred by Plaintiff for treatment of the January 26, 2009 injury. N.C. Gen. Stat. § 97-25.
 * * * * * * * * * * *
Based on the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendant-Carrier shall pay to Plaintiff's widow temporary total disability benefits at the rate of $346.68 per week from January 27, 2009 through March 26, 2010. This compensation has accrued and shall be paid to Plaintiff's widow in a lump sum, subject to the attorney fee hereinafter approved.
2. Defendant-Carrier shall pay to Plaintiff's widow permanent partial disability benefits at the rate of $346.68 for 28.8 weeks. This compensation has accrued and shall be paid to Plaintiff's widow in a lump sum, subject to the attorney fee hereinafter approved.
3. Defendant-Carrier shall pay all medical expenses incurred as a result of the January 26, 2009 injury pursuant to the Fee Schedule.
4. A reasonable attorney's fee of 25% of the compensation awarded to Plaintiff's widow in paragraphs 1 and 2 is hereby approved for Plaintiff's counsel and shall be deducted from the sums due and paid directly to Plaintiff's counsel.
5. Penalty Action 2309 is hereby DISMISSED WITH PREJUDICE.
6. Defendant-Carrier shall bear the costs of this action.
This the ___ day of November 2011.
 S/___________________ TAMMY R. NANCE COMMISSIONER
CONCURRING:
 S/___________________ DANNY L. McDONALD COMMISSIONER
 S/___________________ PAMELA T. YOUNG CHAIR *Page 1